Percy L. ARRINGTON, et al., Plaintiffs,

v.

NATIONAL BROADCASTING COMPANY, INC., Defendant and Third-Party Plaintiff,

v.

NATIONAL ASSOCIATION OF BROADCAST ENGINEERS AND TECHNICIANS, AFL–CIO, Third-Party Defendant.

Douglas H. ALLMOND, et al., Plaintiffs,

v.

AMERICAN BROADCASTING COMPANY, INC., Defendant.

Civ. A. Nos. 81–2019, 81–2018.

United States District Court, District of Columbia.

Jan. 28, 1982.

Lawrence S. Lapidus, Lawrence J. Sherman, Sherman & Lapidus, Washington, D. C., for plaintiffs.

Stuart M. Gerson, Judah Lifschitz, Epstein, Becker, Borsody & Green, Washington, D. C., for defendant in No. 81–2018.

Donald W. Savelson, Proskauer, Rose, Goetz & Mendelsohn, Washington, D. C., for defendant in No. 81–2019.

## MEMORANDUM OPINION

FLANNERY, District Judge.

This matter comes before the court on defendants' motions for summary judgment or, in the alternative, disqualification of plaintiffs' counsel. Defendants assert three grounds in support of their motions: 1) that the instant litigation is, in effect, being

brought by plaintiffs' union, NABET, and as such is barred by section 5 of the Portal-to-Portal Act, 2) that this Fair Labor Standards Act (hereinafter FLSA) suit for overtime wages should be dismissed because it is pre-empted by the collective bargaining agreement between plaintiffs' union and defendants, and 3) that, in any event, plaintiffs' counsel must be disqualified because of conflicts of interest and professional disciplinary rules violations created by their representation of plaintiffs in this case. In response, plaintiffs maintain: 1) that this suit is being brought by individual employees not by their union; 2) that plaintiffs' FLSA rights cannot in any way be pre-empted by the instant collective bargaining agreement, and 3) that there are no conflict of interest and/or disciplinary rule problems preventing them from representing plaintiffs in this case. For the reasons discussed below, defendants' motions are denied.

## FACTS

Plaintiffs, broadcast engineers at both the American Broadcasting Company and the National Broadcasting Company (hereinafter "ABC" and "NBC"), bring this action under the FLSA primarily seeking an award of unpaid overtime compensation.[1] Plaintiffs claim that they are entitled to such an award because defendants' rate of compensating them for overseas work violates the FLSA. Plaintiffs bring this action under section 16(b) of the FLSA, 29 U.S.C.

§ 216(b), which allows employees to bring both individual and group suits for FLSA violations. In order to bring a group suit, the only prerequisite is that all party plaintiffs must file "consent[s] in writing" to be plaintiffs;[2] the instant case is such a group suit.[3]

Defendants' version of the facts differs only in that they view the plaintiffs' union, NABET, and not the individual plaintiffs as being the "real party in interest" in this suit. See at 502–503, infra.

### I. Portal-to-Portal Act

In 1947, in response to a "national emergency"[4] created by a flood of suits under the FLSA aimed at collecting portal-to-portal pay allegedly due employees,[5] Congress enacted the Portal-to-Portal amendments to the FLSA. 61 Stat. 87 (1947). The original, stated purpose of the bill containing these amendments was: "To define and limit the jurisdiction of the courts, to regulate actions arising under certain laws of the United States, and for other purposes." 93 Cong. Rec. 156 (H.R. 2157). To this end, the amendments, among other things,[6] barred unions from bringing representative actions under the FLSA.

This ban on representative actions originated in the Senate's consideration of the bill. See 93 Cong. Rec. 4371. The Chairman of the Senate Judiciary Committee, Senator Donnell, explained the rationale behind this ban:

---

**1.** Plaintiffs also seek liquidated damages, attorneys fees, declaratory and injunctive relief.

**2.** This group action is not a true class action; recovery is allowed only to those similarly situated individuals who actually file written consents. 29 U.S.C. § 216(b).

**3.** This court has already established a procedure for the filing of written consents in this case.

**4.** 93 Cong. Rec. 2194, 80th Cong., 1st Session (Remarks of Senator Wheeler); see 93 Cong. Rec. 2098 (Remarks of Senator Donnell) ("appalling national problem").

**5.** In the seven-month period from July 1, 1946 to January 31, 1947, 1,913 portal-to-portal pay cases were filed in the federal courts, see 93 Cong. Rec. 2088 (Remarks of Senator Donnell);

most of these cases involved very large allegations of liability. *Id.* at 2087. This flood of litigation resulted from the Supreme Court's decision in *Anderson v. Mount Clemens Pottery Co.*, 328 U.S. 680, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946), wherein the Court held that the FLSA required that workers be compensated for time spent walking to work stations and other preliminary and postliminary activities. *Id.* at 691–92, 66 S.Ct. at 1194.

**6.** Such as alteration of the FLSA statute of limitations and institution of a "good faith" defense for employers. Indeed, these other actions taken by Congress appear to have been "the main features of the bill." *See* 93 Cong. Rec. 4388–89 (Remarks of Representative Gwynne Re: Conference Report on Bill).

We now proceed to the final portion of the bill, part IV. Section 8 contains a provision entitled "Representative Actions Banned." Let me say just a word about what is meant by representative actions. It will be recalled that in section 16(b) of the Fair Labor Standards Act there is a provision reading as follows:

Action to recover such liability—

This is, the liability for unpaid minimum wages, unpaid overtime compensation, and liquidated damages—

Action to recover such liability may be maintained in any court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated.

It will be observed, Mr. President, that two types of action are permitted under this sentence in section 16(b) of the Fair Labor Standards Act of 1938: First, a suit by one or more employees, for himself and all other employees similarly situated. That I shall call for the purpose of identification a collective action, a suit brought by one collectively for himself and others. The second class of actions authorized by that sentence embrace those in which an agent or a representative who may not be an employee of the company at all can be designated by the employee or employees to maintain an action on behalf of all employees similarly situated.

In illustration of this latter category— which category for purposes of identification I call a representative action, as distinguished from a collective action—suppose that every one here present this afternoon were employed by the X steel company, and we all belonged to a labor union, and gave a power of attorney to the district director of the labor union who might live 500 miles away and not be employed at all in the plant in which we were employed. He could file a suit there as a representative of all of us. We would not be in that case at all except as he is our representative. It will be noted, therefore, Mr. President, that in those two classes of cases there is this difference: In the first case, an employee, a man who is working for the X steel company can sue for himself and other employees. We see no objection to that. *But the second class of cases, namely, cases in which an outsider, perhaps someone who is desirous of stirring up litigation without being an employee at all, is permitted to be the plaintiff in the case, may result in very decidedly unwholesome champertous[7] situations which we think should not be permitted under the law.*

So section 8 amends the Fair Labor Standards Act by eliminating that portion of section 16(b) which permits employees to designate an agent or representative to maintain an action for and in behalf of all employees similarly situated. 93 Cong. Rec. 2182 (Remarks of Senator Donnell) (emphasis supplied). Thus, it seems clear that the purpose of the ban on representative actions was to prevent large group actions, with their vast allegations of liability, from being brought on behalf of employees who had no real involvement in, or knowledge of, the lawsuit.[8] Such situations unfairly left employers in the dark concerning the identity of the individuals whose claims would be litigated at trial. See Bartels v. Pier Brothers, 74 F.Supp. 41, 44 (E.D.N.Y.1947).

This interpretation is reinforced by the Senate's further amendment to the same section of the FLSA; this amendment provided that no individual could become a party plaintiff in any action unless he gives his consent in writing and such consent is

---

7. Champerty is defined as: "A bargain by a stranger with a party to a suit, by which such third person undertakes to carry on the suit at his own cost and risk, in consideration of receiving, if successful, a part of the proceeds or subject sought to be recovered." Black's Law Dictionary at 292 (4th ed. 1968).

8. The ban was also partially aimed at a fear that unions, as representatives, were concretely benefitting from participation in these suits. See note 7 supra; 93 Cong. Rec. at 2092–96.

filed in the court where the action is brought. Once again, Senator Donnell articulated the rationale for adopting this provision:

> Obviously, Mr. President, this is a wholesome provision, for it is certainly unwholesome to allow an individual to come into court alleging that he is suing on behalf of 10,000 persons and actually not have a solitary person behind him, and then later on have 10,000 men join in the suit, which was not brought in good faith, was not brought by a party in interest, and was not brought with the actual consent or agency of the individuals for whom an ostensible plaintiff filed the suit.

> So we have provided, as I say, that no employee shall be made a party plaintiff to any such action unless he gives his consent in writing and unless such consent is filed in the court in which the action is brought.

> Certainly there is no injustice in that, for if a man wants to join in the suit, why should he not give his consent in writing, and why should not that consent be filed in court?

93 Cong. Rec. 2182. Clearly then, the "consent in writing" requirement is a parallel provision to the ban on representative actions; together they seek to eradicate the problem of totally uninvolved employees gaining recovery as a result of some third party's action in filing suit.

Further, a contemporaneous judicial construction of the amendments supports this court's interpretation of the purpose underlying the ban on representative actions. In 1949, in *Gibbons v. Equitable Life Insurance Society of the United States*, 173 F.2d 337 (2d Cir. 1949), Judge Augustus Hand noted: "The terms of the Portal-to-Portal Act indicate that one of its aims was to prevent the assertion of surprise claims by unnamed employees at a time when the statute of limitations would otherwise have run." *Id.* at 339.

Based upon the ban of representative actions discussed above, defendants argue that the instant cases must be dismissed because they are, in effect, representative actions. Although it is undisputed that plaintiffs' union is not named as a party plaintiff representative in this action, defendants argue that the sum of the union's activities in connection with the instant case indicate that the union is the "real party in interest" in this case and that, in this manner, the union is attempting to achieve indirectly what the Portal-to-Portal Act prohibits it from doing directly. As illustration of the union's activities and involvement, defendants have attached exhibits which indicate:

1) that the initial inquiry to the Department of Labor concerning whether defendants' overseas compensation policies violate the FLSA was made by plaintiffs' counsel at the request of plaintiffs' union;

2) that in this letter plaintiffs' counsel referred to the union as his client;

3) that subsequent to the Department of Labor's response indicating that defendants' overseas compensation policy appeared to violate the FLSA, an official of plaintiffs' union wrote to the Vice-president of Labor Relations at NBC[9] and requested that NBC recalculate the amounts owed to broadcast engineers for overseas assignments in light of the Department of Labor's response;

4) that in this letter to NBC the union official noted: "If we don't receive your agreement to our suggestion, or a mutually acceptable alternative plan we will be forced to seek other means to protect the rights of our members under the statute."; and

5) that the union sent out letters to the membership of its locals which advised the membership that the instant lawsuit had been filed and which noted that "our attorneys" and the Labor Department advise us that the current rates violate the FLSA; in

---

**9.** A similar, although gentler, letter was written to the Vice-president of Labor Relations at

ABC.

addition, the letter tells the membership: "[i]f you wish to be paid properly for your overseas assignments since September 1, 1978, you *MUST* complete the attached CONSENT FORM and return it to the Local 16 offices as soon as possible."

In response, plaintiffs acknowledge that the above-noted activities have taken place, but maintain that such activities merely comprise the union's lawful actions in protecting and informing its membership. Plaintiffs maintain that these types of activities are constitutionally protected associational rights. *See, e.g., United Transportation Union v. State Bar of Michigan*, 401 U.S. 576, 91 S.Ct. 1076, 28 L.Ed.2d 339 (1971); *Brotherhood of Railroad Trainmen v. Virginia*, 377 U.S. 1, 84 S.Ct. 1113, 12 L.Ed.2d 89 (1963); *NAACP v. Button*, 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963). These claims by plaintiffs have substantial merit. In *United Transportation Union*, the Court referred to "group legal action" as a basic right, 401 U.S. at 585, 91 S.Ct. at 1082, and in *Brotherhood of Railroad Trainmen*, the Court stated:

> It cannot be seriously doubted that the First Amendment's guarantees of free speech, petition and assembly give railroad workers the right to gather together for the lawful purpose of helping and advising one another in asserting the rights Congress gave them in the Safety Appliance Act and the Federal Employer's Liability Act, statutory rights which would be vain and futile if the workers could not talk together freely as to the best course to follow.

377 U.S. at 5–6, 84 S.Ct. at 1115. Since all the union's activities in this case are lawful, protected activities, plaintiffs argue that the Portal-to-Portal Act's restrictions cannot be extended to reach these activities. Instead, plaintiffs maintain that the Act prohibits only *actual* representation by a union.

■ Analyzing the arguments of both sides, it is clear that there is a basic tension between the "associational" and "group legal action" rights recognized by the Supreme Court and the reach of the Portal-to-Portal Act's restrictions on union representation in FLSA suits.[10] This being so, the court must strive to achieve a resolution which will protect both sets of interests. Considering the court's above-noted interpretation of the primary purpose of the ban on representative actions, this court finds that the strictures of the Portal-to-Portal Act must be limited solely to prohibiting *actual* representation by a union.[11] Such a limited reading of the ban both fulfills the primary purpose of the amendment by ensuring that all plaintiffs are properly before the court to some degree and protects the legitimate associational rights and privileges shared by a union and its members. Such a limited reading is further supported by the fact that the Portal-to-Portal Amendments were specifically directed at resolving an emergency situation and beyond that context they should be interpreted narrowly. *See* 93 Cong.Rec. 2098 (Remarks of Senator Donnell) (Act solves national problem to best of committee's ability and is accompanied by minimum deprivations). Acceptance of defendants' argument would be contrary to the limited objectives[12] undertaken by the Congress during this unique period of the country's history and, as a result, cannot be permitted.

II. *Pre-emption By Collective Bargaining Agreement*

■ In this argument, defendants argue that the instant lawsuit should be dismissed because plaintiffs' FLSA claims have been pre-empted by the collective bargaining agreement between defendants and plain-

---

**10.** As can best be determined, no other court has yet been faced with this precise issue.

**11.** *See* 93 Cong. Rec. 2098 (Exchange Between Senator Aiken and Senator Donnell) (implying that union support, even of financial nature, behind individual's FLSA suit was permissible under amendments).

**12.** Such as giving the employer early and adequate notice of the identity of the claimant, the nature of the claim, and the asserted extent of liability.

tiffs' union.[13] In effect, defendants are arguing that plaintiffs left their right to assert these individual FLSA claims at the bargaining table (i.e. waived their individual rights) when they, through their union, agreed to the current overseas compensation policy employed by defendants.[14] Such an argument, however, is plainly foreclosed by the Supreme Court's recent decision in *Barrentine v. Arkansas-Best Freight System*, 450 U.S. 728, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981). In *Barrentine*, the Court expressly addressed the issue of whether the provisions of a collective bargaining agreement could overcome an individual's right to maintain suit under the FLSA. In so doing, the Court noted:

> This Court's decisions interpreting the FLSA have frequently emphasized the nonwaivable nature of an individual employee's right to a minimum wage and to overtime pay under the Act. Thus, we have held that FLSA rights cannot be abridged by contract or otherwise waived because this would "nullify the purposes" of the statute and thwart the legislative policies it was designed to effectuate. Moreover, we have held that congressionally-granted FLSA rights take precedence over conflicting provisions in a collectively-bargained compensation arrangement.

101 S.Ct. at 1444–45 (citations omitted). In conclusion, the Court finally noted: "[T]he FLSA rights petitioners seek to assert in this action *are independent of the collective-bargaining process.* They devolve on petitioners as individual workers, not as members of a collective organization. *They are not waivable.*" *Id.,* 101 S.Ct. at 1447 (emphasis supplied). This being so, defendants' claims that plaintiffs have somehow waived their right to assert their FLSA claims clearly lacks merit. Defendants' at-

tempts to refute the plain language of *Barrentine* are totally unimpressive.

### III.  Disqualification of Plaintiffs' Counsel

Defendants have also moved for disqualification of plaintiffs' counsel from this action mainly because of the apparently close relationship between plaintiffs' counsel and plaintiffs' union.[15] Defendants argue that this close relationship creates ethical, professional responsibility problems in the instant case in a number of ways: 1) plaintiffs' counsel, Mr. Lapidus, could be called as a witness by defendants in their action against plaintiffs' union, NABET, which action defendants are seeking to bring together with the instant FLSA action, *see* ABA, Code of Professional Responsibility (hereinafter "CPR") at DR 5–102, 2) plaintiffs' counsel's multiple interests between the union and the plaintiffs could impair both counsel's effectiveness and the integrity of plaintiffs' attorney-client relationship, *see* CPR at DR 5–105, and 3) the association between plaintiffs' counsel and the union could create a significant "appearance of impropriety" in this case. *See* CPR at Canon 9.

### A.  Plaintiffs' Counsel As Witness

■ Since plaintiffs' counsel, Mr. Lapidus, undeniably had contacts relevant to the instant proceeding with the union prior to the institution of this suit, *see* text *supra* at 4–5, defendants maintain that he is clearly subject to being called by them as a witness in any action by them against the union as a result of the union's activities behind this suit. This fact is only important in that both defendants are seeking to maintain third-party actions against the union in this case [16] and Mr. Lapidus might therefore be

---

**13.**  All plaintiffs are members of the union, NABET, which collectively bargained with the defendants.

**14.**  It is undisputed that defendants have abided completely by the terms of this agreement.

**15.**  It is undisputed that plaintiffs' counsel does provide the union with some legal services and that plaintiffs' union referred the instant FLSA

plaintiffs to their current counsel. However, plaintiffs' counsel are not the union's general counsel nor have they ever represented the union in collective bargaining.

**16.**  At present, defendant ABC has a motion for leave to file a third-party complaint pending before this court, while defendant NBC's third-party complaint has already been filed. The reason for this disparity in the status of these

called as a witness in this very action, which, defendants maintain, presents serious problems for the court. *See* CPR at DR 5–102. Without deciding whether Mr. Lapidus' testimony would even be covered by the strictures of DR 5–102 (i.e. would be prejudicial to his client), this court finds that the "witness" issue presents no problem in this case because this court has decided not to allow the maintenance of defendants' third-party actions in this case and, hence, there is no possibility of Mr. Lapidus being called as a witness in this action.

Rule 14(a) provides, in pertinent part:

(a) *When Defendant May Bring in Third Party.* At any time after commencement of the action a defending party, as a third-party plaintiff, may cause a summons and complaint to be served upon a person not a party to the action *who is or may be liable to him for all or part of the plaintiff's claim against him.* Fed.R.Civ.P. 14(a) (emphasis supplied). As the above-highlighted language indicates, Rule 14(a) contemplates that a third-party impleader action, such as those being sought by defendants in this case, will be based on some sort of derivative liability owed to the defendant by the putative third-party defendant. *See House v. Mine Safety Appliances Co.,* 573 F.2d 609, 622 (9th Cir.), *cert. denied,* 439 U.S. 862, 99 S.Ct. 182, 58 L.Ed.2d 171 (1978) (impleader requires secondary or derivative liability by third-party defendant); Wright & Miller, Federal Practice and Procedure § 1446.

In the instant case, any finding of derivative liability appears foreclosed by the Supreme Court's recent decision in *Northwest* *Airlines, Inc. v. Transport Workers Union of America, AFL–CIO,* 450 U.S. 728, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981) which held that there is no right of contribution from a labor union based upon employer violations of the Equal Pay Act provisions of the FLSA. Recognizing the bar imposed by this decision, defendants maintain, nonetheless, that under various theories the union will eventually be liable to them in damages as a result of union activities in "fomenting" this suit and that impleader is therefore proper; such liability, however, is insufficient to meet the "derivative" requirements of Rule 14(a). This being so, this court is exercising its discretion, *see Laffey v. Northwest Airlines, Inc.,* 567 F.2d 429 (D.C.Cir.1976), to deny defendants' claims in support of the instant third-party actions: "Impleader under Rule 14(a) is not permissible unless its conditions are complied with; it is not a device for bringing into an action any controversy which may happen to have some relationship with it." 3 Moore's Federal Practice ¶ 14.04.

### B. Multiple Interests

■ The predicate for this disqualification motion is the notion that plaintiffs' counsel will be unable to provide the plaintiffs with effective representation in this matter because plaintiffs' counsel's attention and energy is improperly split between the interests of the plaintiffs and those of the union.[17] Of course, the above-rendered decision denying defendants third-party actions in this case has removed the main thrust of this "multiple interest" problem from the case at present by ensuring that the plaintiffs and the union will not both be involved in this action. Further, any other "multiple interest" problems that might af-

third-party complaints is that NBC's third-party complaint was timely filed and, hence, filed as a matter of right, whereas ABC failed to file its third-party complaint within 10 days of its answer in this case, hence that complaint was untimely and needs "leave of court" to be filed. *See* Fed.R.Civ.P. 14(a). Plaintiffs have vigorously opposed the third-party actions by opposing ABC's motion for leave to file and by moving to strike NBC's third-party complaint.

**17.** As support for the idea that these multiple interests present problems in this case, defend-

ant ABC cites the recent *Barrentine* decision where the Supreme Court noted that the interests of individual union members, such as the plaintiffs in this case, are often at odds with those of the union. *See Barrentine,* 101 S.Ct. at 1445–46. However, such citation in no way answers the vital question of whether those interests are inconsistent in this case. In fact, the interests of the union in this case in its present posture may be exactly congruent with the individual plaintiffs' interests.

fect plaintiffs' counsel's representation in this case have been cured by the fact that plaintiffs' counsel provided the plaintiffs with full disclosure of their relationship to the union prior to plaintiffs' retention of them as counsel, *see* Plaintiffs' Opposition at 20–21; this is all that the Code of Professional Responsibility seems to require. *See* DR 5–101(A).

### C. Appearance of Impropriety

 Defendants' last argument [18] for disqualifying plaintiffs' counsel is based upon an alleged appearance of impropriety resulting from plaintiffs' counsel's close contact with the union. As defendants correctly note, such appearance of impropriety should be expressly avoided according to Canon 9 of the Code. The court finds, however, that plaintiffs' counsel's relationship to plaintiffs' union creates no such appearance of impropriety in this case.

---

**18.** At oral argument on the instant motion, after plaintiffs' counsel informed the court that at present plaintiffs are incurring no financial obligations in pursuing the instant action because the union is helping to pay costs and plaintiffs' attorneys are hoping to recover their fees through the attorneys' fees provision in the FLSA, defendants raised one additional ground in support of disqualification—Ethical Consideration 5–8, which provides that the ultimate financial liability behind a lawsuit must be that of the client. Although this issue has not been briefed by the parties, two points appear worth mentioning: 1) the ethical considerations contained in the CPR are generally more aspirational and less mandatory than the disciplinary rules contained in the Code, and 2) it is unclear how this ethical consideration should be viewed when the underlying case permits an attorney the possibility of recovering attorneys' fees. It does seem clear that this ethical consideration should not preclude attorneys from pursuing congressionally-sanctioned causes of action, such as the instant FLSA suit. In such instances, an attorney's reliance upon the possibility of attorneys' fees appears no different from the straight contingent fee arrangements so frequently used in other litigation.