[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
October 20, 2003
THOMAS K. KAHN
CLERK

No. 03-11546

D. C. Docket No. 02-80326-CV-KAM

MAXINE CAMERON-GRANT,
FELSHIA TISSIERA,
VELDA A. FREDERICK,

Plaintiffs,

ROSS BASIL,

Plaintiff-Appellant,

versus

MAXIM HEALTHCARE SERVICES, INC.,
a Foreign corporation,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(October 20, 2003)**

Before HULL, MARCUS and STAHL[*], Circuit Judges.

PER CURIAM:

Plaintiff-appellant Ross Basil was one of four plaintiffs who brought this action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., on behalf of themselves as well as "similarly situated" employees.  This appeal raises the question whether Basil, whose personal claims are settled and now moot, may appeal the district court's order denying his motion to notify other potential plaintiffs of this FLSA action.  After review and oral argument, we determine that this action is moot.

## I.  BACKGROUND

On April 12, 2002, plaintiff-appellant Ross Basil, and plaintiffs Maxine Cameron-Grant, Feleshia Tissiera, and Velda A. Frederick, brought this action against defendant-appellee Maxim Healthcare, Inc. ("Maxim") under the FLSA, 29 U.S.C. § 201 et seq.  The plaintiffs filed this action "on behalf of themselves and other similarly situated employees," seeking to recover unpaid back wages, unpaid overtime compensation, an additional equal amount as liquidated damages, and reasonable attorneys' fees and costs.

---

[*]Honorable Norman H. Stahl, United States Circuit Judge for the First Circuit, sitting by designation.

According to the complaint, Defendant Maxim provides healthcare services to adults. At various times, Maxim employed the four named plaintiffs, who are nurses that rendered nursing services on Maxim's behalf. The complaint alleges that the four named plaintiffs sometimes worked longer than forty hours per week and that Maxim failed to compensate them for their work in excess of forty hours per week at a rate of at least one and one-half (1½) times the regulated rate at which they were employed, in violation of 29 U.S.C. § 207. The complaint also alleges that Maxim failed to pay the plaintiffs the applicable minimum hourly rate, in violation of 29 U.S.C. §§ 206 and 215(a)(2), and that Maxim retaliated against the plaintiffs after they complained about not receiving back pay or overtime compensation.

On September 27, 2002, the four named plaintiffs filed a motion for an order permitting court supervised notice to employees of their opt-in rights. The plaintiffs sought permission from the district court to proceed as a "collective action" under 29 U.S.C. § 216(b),[1] asserting that they "know that their claims are

_____

[1]Section 216(b) of the FLSA provides, in pertinent part:
An action to recover the liability prescribed in either of the preceding sentences may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

typical of the claims of other employees of the defendant and are typical of the claims of all members of the representative class."[2]  See 29 U.S.C. § 216(b).

---

29 U.S.C. § 216(b).

[2]In Hipp v. Liberty National Life Insurance Co., 252 F.3d 1208 (11th Cir. 2001), this Court specifically considered collective actions brought under the Age Discrimination in Employment Act of 1967 (ADEA), as amended, 29 U.S.C. §§ 621-34.  Hipp, 252 F.3d at 1214-15. However, the Hipp analysis is relevant to FLSA collective actions because"[p]laintiffs wishing to sue as a class under ADEA must utilize the opt-in class mechanism provided in 29 U.S.C. § 216(b) instead of the opt-out class procedure provided in Fed. R. Civ. P. 23."  Hipp, 252 F.3d at 1216 (citation omitted).

Hipp outlined a two-tiered procedure that district courts should use in certifying collective actions under § 216(b), stating as follows:

> The first determination is made at the so-called "notice stage." At the notice stage, the district court makes a decision – usually based only on the pleadings and any affidavits which have been submitted – whether notice of the action should be given to potential class members.

> Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in "conditional certification" of a representative class. If the district court "conditionally certifies" the class, putative class members are given notice and the opportunity to "opt- in." The action proceeds as a representative action throughout discovery.

> The second determination is typically precipitated by a motion for "decertification" by the defendant usually filed after discovery is largely complete and the matter is ready for trial. At this stage, the court has much more information on which to base its decision, and makes a factual determination on the similarly situated question. If the claimants are similarly situated, the district court allows the representative action to proceed to trial. If the claimants are not similarly situated, the district court decertifies the class, and the opt-in plaintiffs are dismissed without prejudice. The class representatives – i.e. the original plaintiffs – proceed to trial on their individual claims.

Id. at 1218 (quoting Mooney v. Aramco Servs. Co., 54 F.3d 1207, 1213-14 (5th Cir. 1995) (internal footnote omitted)).  Since Hipp, the district courts in our circuit have utilized the two-tiered approach described above.  See, e.g., Reed v. Mobile County Sch. Sys., 246 F. Supp. 2d 1227, 1230 (S.D. Ala. 2003); Barron v. Henry County Sch. Sys., 242 F. Supp. 2d 1096, 1102 (M.D. Ala. 2003); Stone v. First Union Corp., 2003 WL 21850449, *3-5 (S.D. Fla. 2003).

On January 9, 2003, three of the four named plaintiffs, Maxine Cameron-Grant, Feleshia Tissiera, and Velda Frederick, filed a stipulation for dismissal with prejudice of "all of their . . . claims and causes of action in the above-styled case, in their entirety." The district court accepted the dismissal of their claims.

On January 22, 2003, Maxim stipulated to paying the fourth plaintiff's, appellant Basil's, claims for unpaid wages and overtime pay. Basil had other claims pending.

On February 6, 2003, the district court denied the plaintiffs' motion to allow notification to potential opt-in plaintiffs. In analyzing the plaintiffs' motion, the district court applied the two-part test set forth in <u>Dybach v. State of Florida Department of Corrections</u>, 942 F.2d 1562 (11th Cir. 1991). In <u>Dybach</u>, this Court stated that the district court, before exercising its power to give notice to other potential members of the plaintiff class to "opt-in" to the lawsuit, "should satisfy itself that there are other employees of the department-employer who desire to 'opt-in' and who are 'similarly situated' with respect to their job requirements and with regard to their pay provisions." <u>Id.</u> at 1567-68. The district court concluded that "the affidavits and deposition transcripts provided by Plaintiffs are sufficient to satisfy this Court that there are other employees of Defendant who are similarly situated with respect to their job requirements and with regard to pay provisions."

5

However, the district court also found that the plaintiffs failed to set forth evidence that any employees desired to opt-in to the lawsuit.

After the denial of this motion, plaintiff Basil and defendant Maxim agreed to the dismissal of Basil's remaining claims – leaving no claims pending against Maxim. Thus, on March 5, 2003, the district court issued an order entering final judgment on Maxim's stipulation that it would pay some of Basil's claims and that his other claims would be dismissed. According to the order and stipulated final judgment, Maxim specifically "agreed to pay, and now has fully paid [Basil] all claimed unpaid wages and overtime pay, liquidated damages equal to that amount, and [Basil]'s costs and attorneys' fees." The order also stated that "[a]ll other claims in this case have been dismissed with prejudice."

Plaintiff Basil now appeals the district court's order denying the motion to allow notification to potential opt-in plaintiffs. Because Basil has settled some of his claims with Maxim, agreed to dismissal of the remainder of his claims, and even recovered his costs and attorneys' fees, we first must consider whether this action is moot.

## II. DISCUSSION

This appeal raises an issue of first impression: whether a district court's denial of a motion to notify potential opt-in plaintiffs under § 216(b) of the FLSA

6

may be reviewed on appeal after the named plaintiff's personal claims have become "moot."

The general rule is that settlement of a plaintiff's claims moots an action. See Lake Coal Co. v. Roberts & Schaefer Co., 474 U.S. 120, 106 S. Ct. 553, 554, 88 L.Ed.2d 418 (1985); Hammond Clock Co. v. Schiff, 293 U.S. 529, 530, 55 S. Ct. 146, 79 L.Ed. 639 (1934). In the Rule 23 class action context, however, unique mootness principles may apply – when the named plaintiff seeks to have a class certified, the class certification is denied, and his personal claims subsequently become moot – to permit the named plaintiff to appeal the denial of class certification. See, e.g., United States Parole Comm'n v. Geraghty, 445 U.S. 388, 100 S. Ct. 1202, 63 L.Ed.2d 479 (1980); Deposit Guar. Nat'l Bank v. Roper, 445 U.S. 326, 100 S. Ct. 1166, 63 L.Ed.2d 427 (1980); Love v. Turlington, 733 F.2d 1562 (11th Cir. 1984). In this case, we consider whether the mootness principles in the Rule 23 class action context apply to collective actions brought under § 216(b) of the FLSA.

A.    Mootness/Personal Stake and Rule 23 Class Actions

As required by Article III of the Constitution the exercise of judicial power by federal courts "depends upon the existence of a case or controversy." North Carolina v. Rice, 404 U.S. 244, 246, 92 S. Ct. 402, 404, 30 L.Ed.2d 413 (1971)

(internal quotation marks omitted); 31 Foster Children v. Bush, 329 F.3d 1255, 1263 (11th Cir. 2003), petition for cert. filed, 72 U.S.L.W. 3171 (U.S. Sep. 2, 2003) (No. 03-351). "A case is moot when it no longer presents a live controversy with respect to which the court can give meaningful relief." 31 Foster Children, 329 F.3d at 1263 (internal quotation marks and citation omitted). More specifically, a case becomes moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." Powell v. McCormack, 395 U.S. 486, 496, 89 S. Ct. 1944, 1951, 23 L.Ed.2d 491 (1969); 31 Foster Children, 329 F.3d at 1263.

The "legally cognizable interest" or "personal stake" requirement derives from Article III's case or controversy limitation, which restricts the jurisdiction of federal courts "to disputes capable of judicial resolution." Geraghty, 445 U.S. at 396, 100 S. Ct. at 1208. "The 'personal stake' aspect of mootness doctrine [] serves primarily the purpose of assuring that federal courts are presented with disputes they are capable of resolving." Id. at 397, 100 S. Ct. at 1209.

In two cases decided on the same day, United States Parole Commission v. Geraghty, 445 U.S. 388, 100 S. Ct. 1202, 63 L.Ed.2d 479 (1980), and Deposit Guaranty National Bank v. Roper, 445 U.S. 326, 100 S. Ct. 1166, 63 L.Ed.2d 427 (1980), the United States Supreme Court discussed whether the named plaintiff,

8

whose personal claims became moot after the denial of class certification under Rule 23, had a personal stake in appealing that denial. In Geraghty, the plaintiff prisoner challenged the parole release guidelines, but his substantive claims became moot because he was released from prison.[3] In Roper, the plaintiffs challenged the usurious interest rates of the defendant bank, which tendered to plaintiffs the maximum amounts, including interest and costs, that could be recovered. Although the Roper plaintiffs refused the tender, the district court entered judgment for the defendant bank over plaintiffs' objection, which mooted their substantive claims.

In Geraghty, the Supreme Court concluded that the named plaintiff in a Rule 23 class action may have a "personal stake" in the class certification claim in one of two ways. See Geraghty, 445 U.S. at 402, 100 S. Ct. at 1212. First, the named plaintiff may retain, in some cases, a "legally cognizable interest" in the "traditional sense." See id. (citing Powell v. McCormack, 395 U.S. 486, 496, 89 S. Ct. 1944, 1951, 23 L.Ed.2d 491 (1969)). For example, the named plaintiff who retains an "economic interest" in the class certification question continues to have a personal stake in the action. See Roper, 445 U.S. at 336-37, 100 S. Ct. at 1173.

[3]As stated in Geraghty, the plaintiff "was mandatorily released from prison; he had served 22 months of his sentence, and had earned good-time credits for the rest." Geraghty, 445 U.S. at 394.

9

In <u>Roper</u>, the Supreme Court recognized that an economic interest could include the named plaintiff's continuing individual interest in shifting the costs of litigation to the entire class. <u>Id</u>.

In this case, plaintiff Basil does not argue that he has an "economic interest" in appealing the district court's order. Here, the parties agreed to a settlement of some of Basil's claims and the dismissal of his other claims. Thus, in light of the parties' settlement agreement, Basil has no costs or attorneys' fees that he can shift to other members of the putative class. <u>See</u> <u>id</u>.

Having no economic interest in this appeal or any other legally cognizable interest in the "traditional sense," plaintiff Basil's only recourse is to argue that as a named plaintiff in a § 216(b) collective action, he has a "personal stake" in the second manner identified by the Supreme Court in <u>Geraghty</u> – i.e., that the named plaintiff may continue to have a personal stake in the class certification claim that derives from the unique nature of the Rule 23 class action mechanism, as discussed <u>infra</u>.

In discussing how the named plaintiff might have a personal stake in the class certification claim, the Supreme Court in <u>Geraghty</u> and <u>Roper</u> first examined the purposes underlying the creation of Rule 23. In <u>Roper</u>, the Supreme Court explained that the "aggregation of individual claims in the context of a classwide

suit [under Rule 23] is an evolutionary response to the existence of injuries unremedied by the regulatory action of government." Roper, 445 U.S. at 339, 100 S. Ct. at 1174.  The Roper Court stated that "[w]here it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without any effective redress unless they may employ the class-action device." Id.  In Geraghty, the Supreme Court added that the Rule 23 class action mechanism was developed to accommodate varying types of interests, including "the protection of the defendant from inconsistent obligations, the protection of the interests of absentees, the provision of a convenient and economical means for disposing of similar lawsuits, and the facilitation of the spreading of litigation costs among numerous litigants with similar claims." Geraghty, 445 U.S. at 402-403, 100 S. Ct. at 1212.

To achieve the primary benefits of class suits, as stated above, the Geraghty Court stated that "the Federal Rules of Civil Procedure give the proposed class representative the right to have a class certified if the requirements of the Rules are met." Id. at 403, 100 S. Ct. at 1212.  In essence, the named plaintiff who seeks to represent a class under Rule 23 acts in a role that is "analogous to the private attorney general." See id.; Roper, 445 U.S. at 338, 100 S. Ct. at 1174 (stating that class actions represent an "increasing reliance on the 'private attorney general' for

11

the vindication of legal rights").

Thus, the Geraghty Court stated that, in the Rule 23 context, the named plaintiff "presents two separate issues for judicial resolution.  One is the claim on the merits; the other is the claim that he is entitled to represent a class."  Geraghty, 445 U.S. at 402, 100 S. Ct. at 1211 (emphasis added); Love, 733 F.2d at 1565. 1984).  In other words, the named plaintiff has a "procedural . . . right to represent a class" that is independent of his substantive claims.  Geraghty, 445 U.S. at 402, 100 S. Ct. at 1212.  The denial of a motion to certify a class under Rule 23 is "an example of a procedural ruling, collateral to the merits of a litigation, that is appealable after the entry of final judgment."  Roper, 445 U.S. at 336, 100 S. Ct. at 1173.

The Geraghty Court noted, however, that a legally cognizable interest "in the traditional sense rarely ever exists with respect to the class certification claim." Geraghty, 445 U.S. at 402, 100 S. Ct. at 1212.  To ensure that the procedural right is appealable (and to effectuate the purposes of class action suits under Rule 23), the Geraghty Court stated that the named plaintiff nevertheless has a personal stake in the class certification claim so long as "[t]he imperatives of a dispute capable of judicial resolution are sharply presented issues in a concrete factual setting and [there are] self-interested parties vigorously advocating opposing

12

positions." Id. at 403, 100 S. Ct. at 1212.

In Geraghty, the Supreme Court explicitly left open the question "whether a named plaintiff who settles the individual claim after denial of class certification" has a personal stake to appeal the denial of class certification. 445 U.S. at 404 n.10, 100 S. Ct. at 1212 (emphasis added). Since Geraghty, however, this Court has concluded that the rule in Geraghty also applies when the named plaintiff settles his claims. Love, 733 F.2d at 1565 (stating that there was "no meaningful distinction between the settlement of the claim here at issue and the expiration of the claim in Geraghty for purposes of the ability of the named plaintiff to pursue an appeal of the denial of certification").[4]

B.    Collective Actions Under FLSA § 216(b)

The pertinent question in this case, then, is whether the named plaintiff in a § 216(b) action under the FLSA has the right to represent other plaintiffs – that is, whether the named plaintiff has a procedural right analogous to the right provided for by Rule 23 in which the plaintiff can have a personal stake.

---

[4]See Martinez-Mendoza v. Champion Int. Corp, 340 F.3d 1200, 1215-16 (11th Cir. 2003) (stating that "a plaintiff's capacity to act as representative of the class is not ipso facto terminated when he loses his case on the merits. See Satterwhite v. City of Greenville, 634 F.2d 231 (5th Cir. Jan. 1981) (en banc); Armour v. City of Anniston, 654 F.2d 382 (5th Cir. Unit B Aug. 1981) (per curiam); see also Armstrong v. Martin Marietta Corp, 138 F.3d 1374, 1383 n.16 (11th Cir. 1998) (en banc) (noting that in some cases the named plaintiff may appeal a denial of class certification even if she ceases individually to have a controversy with the defendant)").

13

In analyzing this question, we begin by looking to the purposes of § 216(b).

Section 216(b) of the FLSA provides, in pertinent part, that:

> An action to recover the liability prescribed in either of the preceding sentences may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. <u>No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought</u>.

29 U.S.C. § 216(b) (emphasis added). The provisions of § 216(b) are derived in substantial part from the Portal to Portal Act of 1947, pt. IV, § 5, 61 Stat. 84, 87, 88 (1947). See <u>United Food & Commercial Workers Union v. Albertson's, Inc.</u>, 207 F.3d 1193, 1200 (10th Cir. 2000); <u>see also</u> <u>LaChapelle v. Owens-Illinois, Inc.</u>, 513 F.2d 286, 287 n.6 (5th Cir. 1975).[5]

In 1947, Congress enacted the Portal to Portal Act "in response to a 'national emergency' created by a flood of suits under the FLSA aimed at collecting portal-to-portal pay allegedly due employees." <u>Arrington v. Nat'l Broad. Co.</u>, 531 F. Supp. 498, 500 (D.D.C.1982); <u>see also</u> <u>Albertson's</u>, 207 F.3d at 1200-01 (noting that <u>Arrington</u>'s interpretation of Congress's intent in enacting the Portal-to-Portal Act has been embraced by almost all courts confronting the

---

[5]In <u>Bonner v. City of Prichard</u>, 661 F.2d 1206, 1209 (11th Cir.1981) (<u>en banc</u>), we adopted as binding precedent the decisions of the former Fifth Circuit handed down prior to October 1, 1981.

issue in published opinions).  Congress amended the FLSA to limit the parties who could bring suit under that statute.  See State of Nevada Employees' Ass'n v. Bryan, 916 F.2d 1384, 1391 (9th Cir. 1990) (citing 61 Stat. 87).  Specifically, § 216(b) was amended to provide that "standing to pursue an action for liability is statutorily limited to employees only."  Albertson's, 207 F.3d at 1200.  By identifying "employees" as the only proper parties in a § 216(b) action, the Portal to Portal Act aimed to ban representative actions that previously had been brought by unions on behalf of employees.  Id. (stating that the ban was aimed "'at a fear that unions, as representatives, were concretely benefitting from participation in the FLSA suits'") (quoting Arrington, 531 F. Supp. at 502 n.8).

While employees still may sue on behalf of other employees under § 216(b), the 1947 amendments did restrict their rights in one important respect.  The 1947 amendments added an "opt-in" provision, which provides that "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."  29 U.S.C. § 216(b); see also LaChapelle, 513 F.2d at 287 & n.6.  Congress's aim in adding the "opt-in" language to § 216(b) was to "'prevent[] large group actions, with their vast allegations of liability, from being brought on behalf of employees who had no real involvement in, or knowledge of, the

15

lawsuit.'" Albertson's, 207 F.3d at 1200 (quoting Arrington, 531 F. Supp. at 501). "The 'consent in writing' requirement . . . [sought] to eradicate the problem of totally uninvolved employees gaining recovery as a result of some third party's action in filing suit." Arrington, 531 F. Supp. at 502. Thus, the 1947 amendments to the FLSA prohibit what precisely is advanced under Rule 23 – a representative plaintiff filing an action that potentially may generate liability in favor of uninvolved class members.

This distinction between § 216(b) collective actions and Rule 23 class actions is further reflected by the manner in which the two actions are structured. In a Rule 23 proceeding, the named plaintiff describes the class. LaChapelle, 513 F.2d at 288. If the district court determines that the described class meets the requirements of subdivision (a) and either subdivision (b)(1), (b)(2), or (b)(3) of Rule 23, the class comes into being and "each person within the description is considered to be a class member." Id. The existence of a class under Rule 23, therefore, does not depend in theory on the participation of other class members. Irrespective of whether other class members take any or no role in the action, they are bound by the judgment, whether favorable or unfavorable, unless they

16

affirmatively "opt out" of the suit.[6]  Thus, the structure of Rule 23 reflects that the named plaintiff has a claim that "he is <u>entitled to represent a class</u>."  <u>See</u> <u>Geraghty</u>, 445 U.S. at 402, 100 S. Ct. at 1211 (emphasis added).

In light of the history underlying the amendments to the FLSA, it is not surprising that § 216(b) is a fundamentally different creature than the Rule 23 class action.  Even if the § 216(b) plaintiff can demonstrate that there are other plaintiffs "similarly situated" to him, <u>see</u> 29 U.S.C. § 216(b), he has no right to represent them.  Under § 216(b), the action does not become a "collective" action unless other plaintiffs affirmatively opt into the class by giving written and filed consent.  <u>See</u> <u>LaChapelle</u>, 513 F.2d at 288.  Until such consent is given, "no person will be bound by or may benefit from judgment."  <u>Id</u>.  Thus, in contrast to Rule 23 class actions, the existence of a collective action under § 216(b) does depend on the active participation of other plaintiffs.  In other words, under § 216(b), the named plaintiff does not have the right to act in a role analogous to the private attorney general concept.

Considering the "fundamental, irreconcilable difference" between § 216(b)

---

[6]"More correctly, class members may opt out only when the action is maintainable under subdivision (b)(3) of Rule 23. When either subdivision (b)(1) or (b)(2) applies, the rule does not allow a class member to avoid the effect of judgment by disassociating himself from the suit." <u>LaChapelle</u>, 513 F.2d at 288 n.7; Fed. R. Civ. P. 23.

and Rule 23, <u>see</u> <u>LaChapelle</u>, 513 F.2d at 288, we conclude that a § 216(b) plaintiff, like Basil, presents only a claim on the merits. In contrast to the Rule 23 plaintiff, a § 216(b) plaintiff has no claim that he is entitled to represent other plaintiffs.[7] Accordingly, because Plaintiff Basil has no remaining personal claims, this action is moot.

### III. CONCLUSION

For the reasons stated above, we dismiss this appeal as moot.

APPEAL DISMISSED.

---

[7]Because Basil has no personal stake in this appeal, we need not consider whether the controversy is "live." <u>See</u> <u>Powell</u>, 395 U.S. 486, 496, 89 S. Ct. 1944, 1951, 23 L.Ed.2d 491 (1969).