PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-3178
_____

LAURA SYMCZYK, an individual,
on behalf of herself and others similarly situated,

Appellant

v.

GENESIS HEALTHCARE CORPORATION;
ELDERCARE RESOURCES CORPORATION
d/b/a GENESIS ELDERCARE
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
D.C. Civil Action No. 09-cv-05782
(Honorable Michael M. Baylson)
_____

Argued March 7, 2011

Before:  SCIRICA, AMBRO and VANASKIE,
*Circuit Judges.*

(Filed:  August 31, 2011)

GARY F. LYNCH, ESQUIRE (ARGUED)
Carlson Lynch
36 North Jefferson Street
P.O. Box 7635
New Castle, Pennsylvania 16107

GERALD D. WELLS, III, ESQUIRE
Faruqi & Faruqi
101 Greenwood Avenue, Suite 600
Jenkintown, Pennsylvania 19046
     Attorneys for Appellant

JAMES N. BOUDREAU, ESQUIRE (ARGUED)
CHRISTINA TELLADO-WINSTON, ESQUIRE
Greenberg Traurig
2700 Two Commerce Square
2001 Market Street
Philadelphia, Pennsylvania 19103

MICHELE H. MALLOY, ESQUIRE
Littler Mendelson
Three Parkway, Suite 1400
1601 Cherry Street
Philadelphia, Pennsylvania 19102
    Attorneys for Appellees

_____

OPINION OF THE COURT
_____

SCIRICA, *Circuit Judge*.

Laura Symczyk sought relief under the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 207 and 216(b), on behalf of herself and all others similarly situated. The District Court for the Eastern District of Pennsylvania dismissed Symczyk's complaint for lack of subject matter jurisdiction after defendants Genesis HealthCare Corporation and ElderCare Resources Corporation extended an offer of judgment under Fed. R. Civ. P. 68 in full satisfaction of her alleged damages, fees, and costs. At issue in this case is whether a collective action brought under § 216(b) of the FLSA becomes moot when, prior to moving for "conditional certification" and prior to any other plaintiff opting in to the suit, the putative representative receives a Rule 68 offer. We will reverse and remand.

I.

From April 2007 through December 2007, Symczyk was employed by defendants as a Registered Nurse at Pennypack Center in Philadelphia, Pennsylvania. On December 4, 2009, Symczyk initiated a collective action under 29 U.S.C. § 216(b) on behalf of herself and all similarly situated individuals, alleging defendants violated the FLSA when they implemented a policy subjecting the pay of certain employees to an automatic meal break deduction whether or not they performed compensable work during their breaks.[1] On February 18, 2010, defendants filed an

---

[1] Symczyk's amended complaint identified those "similarly situated" as

> All persons employed within the three years preceding the filing of this action by Defendants . . . , whose pay was subject to an automatic 30 minute meal period deduction even when they

answer to Symczyk's complaint and served her with an offer of judgment under Fed. R. Civ. P. 68 in the amount of "$7,500.00 in alleged unpaid wages, plus attorneys' fees, costs and expenses as determined by the Court."[2] Symczyk

performed compensable work during the unpaid "meal break" . . . .

These persons include, but are not limited to, secretaries, housekeepers, custodians, clerks, porters, registered nurses, licensed practical nurses, nurses' aides, administrative assistants, anesthetists, clinicians, medical coders, medical underwriters, nurse case managers, nurse interns, nurse practitioners, practice supervisors, professional staff nurses, quality coordinators, resource pool nurses, respiratory therapists, senior research associates, operating room coordinators, surgical specialists, admissions officers, student nurse technicians, trainers, and transcriptionists employed at any of Defendants' facilities during the three years preceding the filing of this action.

[2] In part, Fed. R. Civ. P. 68 provides:

(a) At least 14 days before the date set for trial, a party defending against a claim may serve on an opposing party an offer to allow judgment on specified terms, with the costs then accrued. If, within 14 days after being served, the opposing party serves written notice accepting the offer, either party may then file the offer and notice of acceptance, plus proof of service. The clerk must then enter judgment.

4

did not dispute the adequacy of defendants' offer but nevertheless declined to respond.

The District Court—unaware of the offer of judgment—held a Fed. R. Civ. P. 16 scheduling conference on March 8, 2010. Two days later, the court entered a scheduling order providing for "an initial ninety (90) day discovery period, at the close of which [Symczyk] will move for conditional certification under § 216(b) of the FLSA." Following the court's ruling on certification, the parties were to have "an additional six (6) month discovery period, to commence at the close of any Court-ordered opt-in window."

On March 23, 2010, defendants filed a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), contending that, because Symczyk had effectively rejected their Rule 68 offer of judgment, *see* Fed. R. Civ. P. 68(a) (providing a plaintiff with 14 days to accept an offer), she "no longer ha[d] a personal stake or legally cognizable interest in the outcome of this action, a prerequisite to this Court's subject matter jurisdiction under Article III of the United States Constitution." Symczyk objected, citing defendants' strategic attempt to "pick off" the named plaintiff before the court could consider her "certification" motion.[3]

---

(b) An unaccepted offer is considered withdrawn, but it does not preclude a later offer. Evidence of an unaccepted offer is not admissible except in a proceeding to determine costs.

[3] On March 29, 2010, defendants removed Symczyk's related state-court action to the United States District Court for the

On May 19, 2010, the District Court "tentatively concluded" that defendants' Rule 68 offer mooted the collective action and that the action should be dismissed for lack of subject matter jurisdiction. *Symczyk v. Genesis HealthCare Corp.*, Civ. No. 09-5782, 2010 U.S. Dist LEXIS 49599, at \*17 (E.D. Pa. May 19, 2010). In its memorandum, the court explained:

> Symczyk does not contend that other individuals have joined her collective action. Thus, this case, like each of the district court cases cited by Defendants, which concluded that a Rule 68 offer of judgment mooted the underlying FLSA collective action, involves a single named plaintiff. In addition, Symczyk does not contest Defendants' assertion that the Rule 68 offer of judgment fully satisfied her claims. . . .

*Id.* at \*16-17. The court instructed Symczyk to file a brief in support of continued federal jurisdiction on her state-law claims and her motion for class certification under Fed. R. Civ. P. 23 by June 10, 2010. *Id.* at \*17. Symczyk did so but conceded she did not believe the court possessed an

Eastern District of Pennsylvania. Thereafter, on April 13, 2010, the parties jointly filed a proposed stipulated order providing Symczyk would voluntarily dismiss her related state-law action and amend her complaint in this action to include those state-law claims asserted in the related action. The District Court entered the parties' stipulated order on April 15, 2010, and Symczyk filed an amended class/collective action complaint on April 23, 2010.

independent basis for jurisdiction over her state-law claims in the event her FLSA claim was dismissed. The District Court declined to exercise supplemental jurisdiction over Symczyk's state-law claims in accordance with 28 U.S.C. § 1367(c) and dismissed those claims without prejudice. The court also dismissed Symczyk's FLSA claim with prejudice in accordance with its earlier memorandum. Symczyk timely appealed.[4]

## II.

## A.

Enacted in 1938, the FLSA, 29 U.S.C. § 201 *et seq.*, was designed "to aid the unprotected, unorganized and lowest

---

[4] Prior to dismissing the action, the District Court had subject matter jurisdiction under 28 U.S.C. § 1331 and 29 U.S.C. § 216(b). We exercise appellate jurisdiction pursuant to 28 U.S.C. § 1291. Our review of the court's order granting defendants' motion to dismiss for lack of subject matter jurisdiction is plenary. *Gould Elecs., Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000). Because defendants' motion to dismiss was based on facts outside the pleadings (i.e., their Rule 68 offer of judgment), the trial court was entitled to weigh and evaluate the evidence bearing on the jurisdictional dispute. *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). This factual evaluation "may occur at any stage of the proceedings." *Id.* "When subject matter jurisdiction is challenged under Rule 12(b)(1), the plaintiff must bear the burden of persuasion." *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991).

paid of the nation's working population; that is, those employees who lacked sufficient bargaining power to secure for themselves a minimum subsistence wage." *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707 n.18 (1945). Under the "collective action" mechanism set forth in 29 U.S.C. § 216(b), an employee alleging an FLSA violation may bring an action on "behalf of himself . . . and other employees similarly situated," subject to the requirement that "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."

Prior to 1947, the FLSA permitted an aggrieved employee to "designate an agent or representative to maintain such action for and in behalf of all employees similarly situated." *Martino v. Mich. Window Cleaning Co.*, 327 U.S. 173, 175 n.1 (1946) (quoting Fair Labor Standards Act of 1938, Pub. L. No. 75-718, § 16(b), 52 Stat. 1060, 1069 (1938)). But in response to "excessive litigation spawned by plaintiffs lacking a personal interest in the outcome," Congress amended the Act to eliminate "representative action by plaintiffs not themselves possessing claims." *Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 173 (1989); *see also* Portal-to-Portal Act of 1947, Pub. L. No. 80-49, § 5(a), 61 Stat. 84, 87 (1947). Further altering the collective action procedure in § 216(b), Congress inserted a requirement that similarly situated employees must affirmatively "opt in" to an ongoing FLSA suit by filing express, written consents in order to become party plaintiffs. *See id.*

In deciding whether a suit brought under § 216(b) may move forward as a collective action, courts typically employ a two-tiered analysis. During the initial phase, the court makes

8

a preliminary determination whether the employees enumerated in the complaint can be provisionally categorized as similarly situated to the named plaintiff. If the plaintiff carries her burden at this threshold stage, the court will "conditionally certify" the collective action for the purposes of notice and pretrial discovery. In the absence of statutory guidance or appellate precedent on the proper definition of "similarly situated," a divergence of authority has emerged on the level of proof required at this stage. Some trial courts within our circuit have allowed a plaintiff to satisfy her burden simply by making a "substantial allegation" in her pleadings that she and the prospective party plaintiffs suffered from a single decision, plan or policy, but the majority of our circuit's trial courts have required the plaintiff to make a "modest factual showing" that the proposed recipients of opt-in notices are similarly situated. *See Wright v. Lehigh Valley Hosp.*, Civ. No. 10-431, 2010 U.S. Dist LEXIS 86915, at *7-10 (E.D. Pa. Aug. 24, 2010) (canvassing cases).

Under the "modest factual showing" standard, a plaintiff must produce some evidence, "beyond pure speculation," of a factual nexus between the manner in which the employer's alleged policy affected her and the manner in which it affected other employees. *See Smith v. Sovereign Bancorp, Inc.*, No. 03-2420, 2003 U.S. Dist LEXIS 21010, at *10 (E.D. Pa. Nov. 13, 2003). We believe the "modest factual showing" standard—which works in harmony with the opt-in requirement to cabin the potentially massive size of collective actions—best comports with congressional intent and with the Supreme Court's directive that a court "ascertain[ ] the contours of [a collective] action at the outset." *See Hoffman-*

9

*La Roche*, 493 U.S. at 172.[5]

[5] Although this two-step approach is nowhere mandated, it appears to have garnered wide acceptance. And, while courts retain broad discretion in determining whether to "conditionally certify" a collective action, it is useful to prescribe a uniform evidentiary standard. *Cf. In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 316-20 (3d Cir. 2008) (outlining the guiding principles for a district court's discretionary evaluation of a class certification motion in the Rule 23 context).

This case illustrates how an uncertain standard may work to the detriment of § 216(b) plaintiffs. Here, the court—unaware of defendants' Rule 68 offer—issued a case management order allotting Symczyk "an initial ninety (90) day discovery period" to compile evidence before she would be expected to move for "conditional certification." Symczyk represents she considered the standard for "conditional certification" a "moving target in our circuit" and requested discovery in order to buttress the allegations in her pleadings with sufficient evidence to make a "meaningful motion" at this initial stage. Because defendants' Rule 68 offer preceded the commencement of this preliminary discovery period, however, Symczyk had no opportunity to gather such evidence before the court granted defendants' motion to dismiss. Had Symczyk been operating under the assumption that the court would employ the "substantial allegation" standard, she may have been prepared to move for "conditional certification" without conducting minimal discovery. And, had the court in fact facilitated notice to potential opt-ins based solely on the allegations in Symczyk's complaint, defendants' Rule 68 offer may not have antedated

After discovery, and with the benefit of "a much thicker record than it had at the notice stage," a court following this approach then makes a conclusive determination as to whether each plaintiff who has opted in to the collective action is in fact similarly situated to the named plaintiff. *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1261 (11th Cir. 2008). "This second stage is less lenient, and the plaintiff bears a heavier burden." *Id.* Should the plaintiff satisfy her burden at this stage, the case may proceed to trial as a collective action.[6]

---

the arrival of a consent form from a party plaintiff, an occurrence that would have fundamentally transformed the court's mootness analysis.

[6] Because only the notice stage is implicated in this appeal, we need not directly address the level of proof required to satisfy the similarly situated requirement at the post-discovery stage. Although this standard must necessarily be more rigorous than the standard applicable at the notice stage, the fact-specific, flexible nature of this approach affords district judges latitude in exercising their discretion. *See* 45C Am. Jur. 2d *Job Discrimination* § 2184 (2011) (listing fourteen factors courts may consider at the post-discovery stage). As we have explained:

> A representative (but not exhaustive or mandatory) list of relevant factors [at this stage] includes whether the plaintiffs are employed in the same corporate department, division and location; advanced similar claims of . . . discrimination; sought substantially the same form of relief; and had similar salaries and circumstances of employment. Plaintiffs may

11

Absent from the text of the FLSA is the concept of "class certification." As the Eighth Circuit has noted, however, "[m]any courts and commentators . . . have used the vernacular of the Rule 23 class action for simplification and ease of understanding when discussing representative cases brought pursuant to § 16(b) of the FLSA." *Kelley v. Alamo*, 964 F.2d 747, 748 n.1 (8th Cir. 1992). As a result, courts commonly refer to a plaintiff's satisfaction of her burden at the notice stage as resulting in "conditional certification," *see, e.g.*, *Ruehl v. Viacom, Inc.*, 500 F.3d 375, 389 n.17 (3d Cir. 2007), or "provisional certification," *see, e.g.*, *Nash v. CVS Caremark Corp.*, 683 F. Supp. 2d 195, 199 (D.R.I. 2010). Similarly, the court's second-step analysis is traditionally triggered by a defendant's motion to "decertify the class" on the ground that its proposed members are not similarly situated. *See, e.g.*, *Lusardi v. Xerox Corp.*, 975 F.2d 964, 967 (3d Cir. 1992). And, in the same fashion, a named plaintiff becomes a "class representative," *see, e.g.*, *id.* at 966, his attorney becomes "class counsel," *see, e.g.*, *Harkins v. Riverboat Servs., Inc.*, 385 F.3d 1099, 1101 (7th Cir. 2004), and similarly situated employees become "potential class members," *see, e.g.*, *In re Family Dollar FLSA Litig.*, 637 F.3d 508, 518 (4th Cir. 2011).

Despite this judicial gloss on § 216(b), "the 'certification' we refer to here is only the district court's exercise of [its] discretionary power, upheld in *Hoffmann-La*

---

also be found dissimilar on the basis of case management issues, including individualized defenses.

*Ruehl v. Viacom, Inc.*, 500 F.3d 375, 389 n.17 (3d Cir. 2007) (citations omitted).

*Roche*, to facilitate the sending of notice to potential class members," and "is neither necessary nor sufficient for the existence of a representative action under FLSA." *Myers v. Hertz Corp.*, 624 F.3d 537, 555 n.10 (2d Cir. 2010); *see also Morgan*, 551 F.3d at 1261 n.40 ("District courts following the two-step . . . approach should treat the initial decision to certify and the decision to notify potential collective action members as synonymous.").[7] Defendants here rely heavily on the superficiality of the similarities between the "certification" processes inherent in Rule 23 class actions and § 216(b) collective actions in arguing Symczyk could not purport to "represent" the interests of similarly situated employees before anyone had opted in to the action. And, as noted, expedient adoption of Rule 23 terminology with no mooring in the statutory text of § 216(b) may have injected a measure of confusion into the wider body of FLSA jurisprudence. Although "conditional certification" may not vest a § 216(b) "class" with the independent legal status that certification provides a Rule 23 class, *see Trotter v. Klincar*, 748 F.2d 1177, 1183 (7th Cir. 1984), this realization does not

---

[7] In *Hoffmann-La Roche*, the Supreme Court recognized the efficacy of § 216(b) hinges on "employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." 493 U.S. at 170. To ensure this task "is accomplished in an efficient and proper way," the Court interpreted § 216(b) as endowing district courts with "the requisite procedural authority to manage the process of joining multiple parties in a manner that is orderly, sensible, and not otherwise contrary to statutory commands or the Federal Rules of Civil Procedure." *Id.* at 170-71.

control our mootness analysis in the manner suggested by defendants. Provision of notice does not transform an FLSA suit into a "representative action," but, as we will explain, its central place within the litigation scheme approved of by the Supreme Court in *Hoffmann-La Roche* necessarily shapes our approach to squaring Rule 68 and § 216(b).

B.

Article III of the United States Constitution limits the jurisdiction of the federal courts to "actual 'Cases' and 'Controversies.'" *Sprint Commc'ns Co. v. APCC Servs., Inc.*, 554 U.S. 269, 298 (2008) (Roberts, C.J., dissenting). "When the issues presented in a case are no longer 'live' or the parties lack a legally cognizable interest in the outcome, the case becomes moot and the court no longer has subject matter jurisdiction." *Weiss v. Regal Collections*, 385 F.3d 337, 340 (3d Cir. 2004). "An offer of complete relief will generally moot the plaintiff's claim, as at that point the plaintiff retains no personal interest in the outcome of the litigation." *Id.* Thus, whether or not the plaintiff accepts the offer, no justiciable controversy remains when a defendant tenders an offer of judgment under Rule 68 encompassing all the relief a plaintiff could potentially recover at trial. *See Rand v. Monsanto Co.*, 926 F.2d 596, 598 (7th Cir. 1991). We have recognized, however, that conventional mootness principles do not fit neatly within the representative action paradigm. *Cf. Lusardi*, 975 F.2d at 974 ("[S]pecial mootness rules apply in the class action context, where the named plaintiff purports to represent an interest that extends beyond his own.").

Rule 68 was designed "to encourage settlement and avoid litigation." *Marek v. Chesny*, 473 U.S. 1, 5 (1985). In the representative action arena, however, Rule 68 can be

manipulated to frustrate rather than to serve these salutary ends. Exploring this deviation from Rule 68's purposes, the Supreme Court has noted:

> Requiring multiple plaintiffs to bring separate actions, which effectively could be 'picked off' by a defendant's tender of judgment before an affirmative ruling on class certification could be obtained, obviously would frustrate the objectives of class actions; moreover it would invite waste of judicial resources by stimulating successive suits brought by others claiming aggrievement.

*Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 339 (1980); *see also Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1050 (5th Cir. Unit A July 1981) ("By tendering to the named plaintiffs the full amount of their personal claims each time suit is brought as a class action, the defendants can in each successive case moot the named plaintiffs' claims before a decision on certification is reached.").

We addressed the tension between Rules 23 and 68 in *Weiss*. There, the named plaintiff filed a federal class action complaint alleging violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, and, prior to moving for class certification, received a Rule 68 offer of judgment in full satisfaction of the individual relief sought. The plaintiff rejected the offer, and the court granted the defendants' 12(b)(1) motion to dismiss the complaint on mootness grounds. On appeal, we explored the applicability of the "relation back" doctrine to a scenario in which the defendants' "tactic of 'picking off' lead plaintiffs with a Rule

68 offer . . . may deprive a representative plaintiff the opportunity to timely bring a class certification motion, and also may deny the court a reasonable opportunity to rule on the motion." 385 F.3d at 347. Finding application of the doctrine necessary to vindicate the policy aims inherent in Rule 23, we held that, "[a]bsent undue delay in filing a motion for class certification . . . where a defendant makes a Rule 68 offer to an individual claim that has the effect of mooting possible class relief asserted in the complaint, the appropriate course is to relate the certification motion back to the filing of the class complaint." *Id.* at 348. As there had been no undue delay, we reversed and directed the district court to allow the plaintiff to file a class certification motion that would "relate back" to the filing of the complaint. *Id.*[8]

---

[8] In *Weiss*, we noted that our opinion might be viewed as creating tension with *Lusardi*, which involved alleged violations of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621 *et seq.* Section 7(b) of the ADEA incorporates § 216(b) by reference. *See* 29 U.S.C. § 626(b). However, in distinguishing *Lusardi*, we did not rely on the differences between the procedures applicable to Rule 23 and § 216(b) actions. *See Weiss*, 385 F.3d at 348-49. Instead, we explained that *Lusardi*, unlike *Weiss*, involved a voluntary settlement entered into by the named plaintiffs rather than "an offer of judgment made in response to the filing of a complaint." *Id.* at 349. We wrote:

> In this appeal, the 'picking off' scenarios described by the Supreme Court in *Roper* are directly implicated. In *Lusardi* they were not. . . . In *Lusardi*, no unilateral action by the Defendant rendered the plaintiffs' claims

In essence, the relation back doctrine allows a district court to retain jurisdiction over a matter that would appear susceptible to dismissal on mootness grounds by virtue of the expiration of a named plaintiff's individual claims. In *Sosna v. Iowa*, 419 U.S. 393, 401 (1975), the Supreme Court found federal court jurisdiction to adjudicate a live controversy between members of a certified Rule 23 class and a named defendant was not extinguished by the named plaintiff's claim becoming moot before the district court reached the merits of the case. Addressing the possibility that resolution of the controversy as to the named plaintiffs may occur "before the district court can reasonably be expected to rule on a certification motion," the Court explained such certification "can be said to 'relate back' to the filing of the complaint" when the issue might otherwise evade review. *Id.* at 402 n.11; *see also U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 399 (1980) (preserving an Article III court's authority to review class certification issues when a named plaintiff's claims are "so inherently transitory that the trial court will not have even enough time to rule on a motion for class certification before the proposed representative's individual interest expires").

This equitable principle has evolved to account for calculated attempts by some defendants to short-circuit the

> 'inherently transitory.' Defendants here used the Rule 68 offer to thwart the putative class action before the certification question could be decided.

*Id.* These considerations are not unique to the Rule 23 context, and *Weiss* did not turn on the disparity between opt-in and opt-out actions.

class action process and to prevent a putative representative from reaching the certification stage. Certification vests a named plaintiff with a procedural right to act on behalf of the collective interests of the class that exists independent of his substantive claims. *See Sosna*, 419 U.S. at 399 (explaining that, once a class has been certified, the mooting of a class representative's individual claims does not invariably result in the mooting of the entire action because "the class of unnamed persons described in the certification acquire[s] a legal status separate from the interest asserted by [the named plaintiff]"). Although traditional mootness rules would ordinarily apply absent an affirmative ruling on class certification, "in certain circumstances, to give effect to the purposes of Rule 23, it is necessary to conceive of the named plaintiff as a part of an indivisible class and not merely a single adverse party even before the class certification question has been decided." *Weiss*, 385 F.3d at 347. The rationale underpinning the relation back doctrine serves to shield from dismissal on mootness grounds those claims vulnerable to being "picked off" by defendants attempting to forestall class formation. As the Seventh Circuit has explained:

> Normally, . . . a class action must be certified as such in order for it to escape dismissal once the claims of the named plaintiff become moot. But the courts have recognized that an absolute requirement would prevent some otherwise justiciable claims from ever being subject to judicial review. . . . [J]ust as necessity required the development of the relation back doctrine in cases where the underlying factual situation naturally changes so rapidly that the courts

18

cannot keep up, so necessity compels a similar result here. If the class action device is to work, the courts must have a reasonable opportunity to consider and decide a motion for certification. If a tender made to the individual plaintiff while the motion for certification is pending could prevent the courts from ever reaching the class action issues, that opportunity is at the mercy of a defendant, even in cases where a class action would be most clearly appropriate.

*Susman v. Lincoln Am. Corp.*, 587 F.2d 866, 870 (7th Cir. 1978) (citations omitted).

When a defendant's Rule 68 offer threatens to preempt the certification process, reconciling the conflicting imperatives of Rules 23 and 68 requires allocating sufficient time for the process to "play out." *Weiss*, 385 F.3d at 348. By invoking the relation back doctrine, a court preserves its authority to rule on a named plaintiff's attempt to represent a class by treating a Rule 23 motion as though it had been filed contemporaneously with the filing of the class complaint. Consequently, "the 'relation back' principle ensures that plaintiffs can reach the certification stage." *Sandoz v. Cingular Wireless LLC*, 553 F.3d 913, 919 (5th Cir. 2008).

### III.

### A.

The issue we must resolve on this appeal, then, is whether an FLSA collective action becomes moot when (1) the putative representative receives a Rule 68 offer in full

satisfaction of her individual claim prior to moving for "conditional certification," and (2) no other potential plaintiff has opted in to the suit.[9] Animating our decision in *Weiss* was the ability of defendants to use Rule 68 "to thwart the putative class action before the certification question could be decided." 385 F.3d at 349. Symczyk cites similar arguments in the § 216(b) context and discerns no material distinction between the two procedures insofar as this consideration is concerned. By contrast, defendants contend *Weiss* does not apply in the FLSA context because a putative § 216(b) named plaintiff allegedly lacks the "representative" status that accords a Rule 23 named plaintiff a personal stake in the matter sufficient to confer continued Article III jurisdiction once his individual claim has been mooted. We believe the

---

[9] Relying on a careful analysis of various district court efforts to grapple with the interplay of Rule 68 and § 216(b) provided in *Briggs v. Arthur T. Mott Real Estate LLC*, No. 06-0468, 2006 U.S. Dist LEXIS 82891 (E.D.N.Y. Nov. 14, 2006), the District Court concluded Symczyk's case was distinguishable from those in which courts declined to dismiss complaints following Rule 68 offers because, in those, "other individuals had already opted in to join the collective action, it was unclear whether the Rule 68 offer fully satisfied the plaintiff's claims, or the plaintiff had already filed a motion for conditional certification under § 216(b)." *Symczyk*, 2010 U.S. Dist LEXIS 49599, at *13 (footnotes omitted). Here, Symczyk did not dispute the adequacy of the offer as it pertained to the value of her individual claim. However, as we will explain, we believe treating the other two conditions as dispositive would be imprudent.

considerations warranting application of the relation back doctrine to Rule 23 class actions also apply to § 216(b) collective actions.

In support of their effort to confine *Weiss* to the class action setting, defendants rely principally on the dissimilar roles played by Rule 23 and § 216(b) named plaintiffs. As noted, the statutory form of aggregation provided for in the FLSA requires each party plaintiff affirmatively to opt in to a collective action by filing a consent form "in the court in which such action is brought." 29 U.S.C. § 216(b). Whereas a member of a certified class in a Rule 23(b)(3) proceeding will be bound by judgment unless he has intentionally opted out of the suit, resolution of a § 216(b) collective action will not bind any similarly situated employee absent his express, written consent. *See id.*; *LaChapelle v. Owens-Illinois, Inc.*, 513 F.2d 286, 288 (5th Cir. 1975).[10] Defendants argue a § 216(b) named plaintiff whose individual claim has been mooted by a Rule 68 offer before anyone has opted in to the action cannot purport to possess a personal stake in representing the interests of others.[11]

---

[10] Of course, class actions certified under Rule 23(b)(1) or (b)(2) are "mandatory" class actions in that class members are not permitted to opt out. *Wal-Mart Stores, Inc v. Dukes*, --- U.S. ----, 131 S. Ct. 2541, 2558 (2011).

[11] As noted, the Portal-to-Portal Act notionally abolished "representative actions." *See* Pub. L. No. 80-49, § 5(a), 61 Stat. 84, 87 (1947). This amendment, however, did not strip an employee—such as Symczyk—of her right to act on behalf of similarly situated co-workers. Rather, the 1947 amendment eliminated the so-called "agency suit," divesting nonparty representatives of standing to initiate actions under § 216(b).

Although defendants' logic has some surface appeal, reliance on the watershed event of an opt-in to trigger application of the special mootness rules that prevail in the representative action context incentivizes the undesirable strategic use of Rule 68 that prompted our holding in *Weiss*.[12]

*See id.* "By identifying 'employees' as the only proper parties in a § 216(b) action, the Portal to Portal Act aimed to ban representative actions that previously had been brought by unions on behalf of employees." *Cameron-Grant v. Maxim Healthcare Servs.*, 347 F.3d 1240, 1248 (11th Cir. 2003); *see also Arrington v. Nat'l Broad. Co.*, 531 F. Supp. 498, 502 (D.D.C. 1982) (explaining Congress amended the FLSA "to eradicate the problem of totally uninvolved employees gaining recovery as a result of some third party's action in filing suit"). The FLSA does not prevent an employee, serving as lead plaintiff, from fulfilling a representative role. When defendants made their Rule 68 offer of judgment, Symczyk represented only her own interests, and defendants' potential liability consisted entirely of the individual damages sought by Symczyk as named plaintiff. That Symczyk had yet to assume a representative role vis-à-vis the allegedly similarly situated employees listed in her complaint stemmed not from some purported statutory prohibition but instead from defendants' successful attempt to pick her off before the court had occasion to consider the suitability of allowing the claims to be litigated collectively with Symczyk as lead plaintiff.

[12] In both *Susman* and *Zeidman*, the relation back rationale was deployed to salvage a court's jurisdiction over class complaints when the named plaintiffs' claims had ostensibly been mooted while their motions for class certification were pending. However, because "the federal rules do not require

As the Supreme Court explained in *Hoffmann-La Roche*, actualization of § 216(b)'s purposes often necessitates a district court's engagement at the notice phase of the proceeding. 493 U.S. at 170-71; *see also Morgan*, 551 F.3d at 1259 ("[T]he importance of certification, at the initial stage, is that it authorizes either the parties, or the court itself, to facilitate notice of the action to similarly situated employees."). When a defendant's Rule 68 offer arrives before the court has had an opportunity to determine whether a named plaintiff has satisfied his burden at this threshold stage, and the court has therefore refrained from overseeing the provision of notice to potential party plaintiffs, it is not surprising to find the offer has also preceded the arrival of any consent forms from prospective opt-ins. If our mootness inquiry in the § 216(b) context were predicated inflexibly on whether any employee has opted in to an action at the moment a named plaintiff receives a Rule 68 offer, employers would have little difficulty preventing FLSA plaintiffs from attaining the "representative" status necessary to render an action justiciable notwithstanding the mooting of their individual claims.

In *Sandoz*, the only court of appeals' decision to

certification motions to be filed with the class complaint, nor do they require or encourage premature certification determinations," we explained in *Weiss* that "reference to the bright line event of the filing of the class certification motion may not always be well-founded." 385 F.3d at 347. Consequently, we extended the doctrine to instances in which the plaintiff moved for class certification subsequent to receipt of a Rule 68 offer so long as he did so without "undue delay." *Id.* at 348.

address the applicability of the relation back doctrine in the FLSA context, the Fifth Circuit concluded Congress did not intend, through the enactment of § 216(b), to create an "anomaly" by allowing employers "to use Rule 68 as a sword, 'picking off' representative plaintiffs and avoiding ever having to face a collective action." 553 F.3d at 919. The court elaborated:

> [T]he differences between class actions and FLSA § 216(b) collective actions do not compel a different result regarding whether a certification motion can "relate back" to the filing of the complaint. The status of a case as being an "opt in" or "opt out" class action has no bearing on whether a defendant can unilaterally moot a plaintiff's case through a Rule 68 offer of judgment. Although the differences between Rule 23 class actions and FLSA § 216(b) collective actions alter the conceptual mootness inquiry, each type of action would be rendered a nullity if defendants could simply moot the claims as soon as the representative plaintiff files suit. Thus, the policies behind applying the "relation back" principle for Rule 23 class actions apply with equal force to FLSA § 216(b) collective actions.

*Id.* at 920 (citations omitted). There, the defendant tendered its offer of judgment approximately one month after Sandoz had commenced her FLSA action, and Sandoz waited thirteen months after filing her complaint to move for "conditional certification." *Id.* at 921. Borrowing language from *Weiss* and holding that "relation back is warranted only when the plaintiff files for certification 'without undue delay,'" *id.*

24

(quoting *Weiss*, 385 F.3d at 348), the Fifth Circuit remanded for the district court to consider whether Sandoz had "timely sought certification of her collective action," *id.*

B.

Although the opt-in mechanism transforms the manner in which a named plaintiff acquires a personal stake in representing the interests of others, it does not present a compelling justification for limiting the relation back doctrine to the Rule 23 setting. The considerations that caution against allowing a defendant's use of Rule 68 to impede the advancement of a representative action are equally weighty in either context. Rule 23 permits plaintiffs "to pool claims which would be uneconomical to litigate individually." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985). Similarly, § 216(b) affords plaintiffs "the advantage of lower individual costs to vindicate rights by the pooling of resources." *Hoffmann-La Roche*, 493 U.S. at 170. Rule 23 promotes "efficiency and economy of litigation." *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 349 (1983). Similarly, "Congress' purpose in authorizing § 216(b) class actions was to avoid multiple lawsuits where numerous employees have allegedly been harmed by a claimed violation or violations of the FLSA by a particular employer." *Prickett v. DeKalb Cnty.*, 349 F.3d 1294, 1297 (11th Cir. 2003).

When Rule 68 morphs into a tool for the strategic curtailment of representative actions, it facilitates an outcome antithetical to the purposes behind § 216(b). Symczyk's claim—like that of the plaintiff in *Weiss*—was "acutely susceptible to mootness" while the action was in its early stages and the court had yet to determine whether to facilitate notice to prospective plaintiffs. *See Weiss*, 385 F.3d at 347

(internal quotation marks omitted). When the certification process has yet to unfold, application of the relation back doctrine prevents defendants from using Rule 68 to "undercut the viability" of either type of representative action. *See id.* at 344.

## C.

Additionally, the relation back doctrine helps safeguard against the erosion of FLSA claims by operation of the Act's statute of limitations. To qualify for relief under the FLSA, a party plaintiff must "commence" his cause of action before the statute of limitations applying to his individual claim has lapsed. *Sperling v. Hoffmann-La Roche, Inc.*, 24 F.3d 463, 469 (3d Cir. 1994).[13] For a named plaintiff, the action commences on the date the complaint is filed. 29 U.S.C. § 256(a). For an opt-in plaintiff, however, the action commences only upon filing of a written consent. *Id.* § 256(b). This represents a departure from Rule 23, in which the filing of a complaint tolls the statute of limitations "as to all asserted members of the class" even if the putative class member is not cognizant of the suit's existence. *See Crown, Cork & Seal Co.* 462 U.S. at 350 (internal quotation marks omitted). Protracted disputes over the propriety of dismissal in light of Rule 68 offers may deprive potential opt-ins whose claims are in jeopardy of expiring of the opportunity to toll the limitations period—and preserve their entitlements to

---

[13] Plaintiffs seeking recovery under the FLSA must commence an action within two years of the alleged violation (or within three years if the violation is "willful"). 29 U.S.C. § 255(a).

26

recovery—by filing consents within the prescribed window.[14]

## D.

In sum, we believe the relation back doctrine helps ensure the use of Rule 68 does not prevent a collective action from playing out according to the directives of § 216(b) and the procedures authorized by the Supreme Court in *Hoffmann-La Roche* and further refined by courts applying this statute. Depriving the parties and the court of a reasonable opportunity to deliberate on the merits of collective action "conditional certification" frustrates the objectives served by § 216(b). *Cf. Sandoz*, 553 F.3d at 921 (explaining "there must be some time for a[n FLSA] plaintiff

---

[14] Defendants contend a party plaintiff's cause of action vests at the moment he files his consent form and that no conception of the relation back doctrine would permit this statutorily mandated act of opting in to relate back to the filing of the collective action complaint. While perhaps true, this assertion is beside the point. For the sake of argument, consider a hypothetical co-worker of Symczyk's who was subjected to a willful FLSA violation and whose tenure with the company also ended in December 2007. Because Symczyk's complaint was dismissed before this (or any) employee had opted in to the action, this potential plaintiff forfeited any claim to relief in December 2010. The relation back doctrine cannot, at this juncture, redeem this would-be plaintiff's cause of action. However, had Symczyk been permitted to move—in timely fashion—for "conditional certification" in light of defendants' March 2010 motion to dismiss, this plaintiff may have received notice of the ongoing collective action prior to her claim growing stale.

to move to certify a collective action before a defendant can moot the claim through an offer of judgment"). Absent undue delay, when an FLSA plaintiff moves for "certification" of a collective action, the appropriate course—particularly when a defendant makes a Rule 68 offer to the plaintiff that would have the possible effect of mooting the claim for collective relief asserted under § 216(b)—is for the district court to relate the motion back to the filing of the initial complaint.

Upon remand, should Symczyk move for "conditional certification," the court shall consider whether such motion was made without undue delay, and, if it so finds, shall relate the motion back to December 4, 2009—the date on which Symczyk filed her initial complaint. If (1) Symczyk may yet timely seek "conditional certification" of her collective action, (2) the court permits the case to move forward as a collective action (by virtue of Symczyk's satisfaction of the "modest factual showing" standard), and (3) at least one other similarly situated employee opts in, then defendants' Rule 68 offer of judgment would no longer fully satisfy the claims of everyone in the collective action, and the proffered rationale behind dismissing the complaint on jurisdictional grounds would no longer be applicable. If, however, the court finds Symczyk's motion to certify would be untimely, or otherwise denies the motion on its merits, then defendants' Rule 68 offer to Symczyk—in full satisfaction of her individual claim—would moot the action.

IV.

For the foregoing reasons, we will reverse the judgment of the District Court and remand for proceedings consistent with this opinion.