PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-3089
_____

STEVEN HALLE,
on behalf of himself and all others similarly situated

v.

WEST PENN ALLEGHENY HEALTH SYSTEM INC;
WESTERN PENNSYLVANIA
HEALTHCARE SYSTEM INC; ALLE KISKI MEDICAL
CENTER; ALLEGHENY GENERAL
HOSPITAL; ALLEGHENY GENERAL HOSPITAL
SUBURBAN CAMPUS; WESTERN
PENNSYLVANIA HOSPITAL; WESTERN
PENNSYLVANIA HOSPITAL FORBES
REGIONAL CAMPUS; ALLEGHENY MEDICAL
PRACTICE NETWORK; ALLEGHENY
SPECIALTY PRACTICE NETWORK; WEST PENN
PHYSICIAN PRACTICE NETWORK;
ALLEGHENY SINGER RESEARCH INSTITUTE;
HIGHMARK INC; ALLEGHENY HEALTH
NETWORK; JOHN W. PAUL; BART METZGER;
CHRISTOPHER T. OLIVIA; JOHN LASKY;
CANONSBURG GENERAL HOSPITAL

SENORA TARPLEY; KATIEJO BIGENHO; WAYNE HABER,
on their own behalf and on behalf of all
other opt-in plaintiffs,
Appellants

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
District Court No. 2-13-cv-01449
District Judge: The Honorable Cathy Bissoon

_____

Argued September 28, 2016

Before: AMBRO, SMITH,[*] and FISHER, *Circuit Judges*

(Filed:   November 18, 2016)

David S. Fryman (Argued)
Elizabeth K. McManus
Ballard Spahr
1735 Market Street
51st Floor
Philadelphia, PA  19103
        *Counsel for Appellee*

_____

[*] Honorable D. Brooks Smith, United States Circuit Judge for the Third Circuit, assumed Chief Judge status on October 1, 2016.

2

Jonathan W. Ferris
J. Nelson Thomas (Argued)
Thomas & Solomon
693 East Avenue
Rochester, NY  14607
     *Counsel for Appellant*

_____

OPINION
_____

SMITH, *Chief Judge.*

Appellants are three hospital employees who claim they were not properly compensated for work performed during meal breaks.  They seek review of a District Court's decision that declined to permit a civil case in which they wished to participate to continue as a collective action under the Fair Labor Standards Act ("FLSA") § 16(b), 29 U.S.C. § 216(b).

This is the second decertification-related appeal in a series of four similar FLSA cases filed in the Western District of Pennsylvania.  We dismissed the first appeal, which consolidated two of the District Court proceedings, for lack of appellate jurisdiction and mootness. *Camesi v. University of Pittsburgh Med. Ctr.*, 729 F.3d 239 (3d Cir. 2013). Appellants in the current appeal candidly acknowledge that they are before us in an effort to correct the procedural flaws that prevented us from reaching the merits of the

3

decertification decision in the first appeal. Despite their efforts, Appellants fare no better this time around. We will dismiss this appeal.

I.

A.

The first round of litigation began in 2009 when two groups of plaintiffs filed separate but similar complaints against two large Western Pennsylvania hospitals and their affiliated health care facilities and centers: *Camesi v. University of Pittsburgh Medical Center*, No. 3:09-cv-00085 (W.D. Pa.), and *Kuznyetsov v. West Penn Allegheny Health System, Inc.*, No. 2:09-cv-00379 (W.D. Pa.) (later consolidated into No. 2:10-cv-00948 (W.D. Pa.)). The complaints alleged that the hospital defendants violated the FLSA by failing to properly pay their employees for work performed during scheduled meal breaks. The named plaintiffs purported to bring the claims as collective actions on behalf of themselves and all other similarly situated employees pursuant to FLSA § 16(b), 29 U.S.C. § 216(b).[1]

---

[1] The complaints also raised class action claims pursuant to Rule 23 of the Federal Rules of Civil Procedure, and claims under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132, and the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1964. The ERISA and RICO claims were dismissed with prejudice. No Rule 23 class was certified, nor were those dismissals challenged in the earlier appeal.

District Judge Cathy Bissoon conditionally certified the collective action in *Camesi* on May 14, 2009, and District Judge Donetta Ambrose conditionally certified the collective action in *Kuznyetsov* on June 1, 2009. Both judges approved detailed notices to be sent to potential collective action members. Among other things, the notices advised that, by consenting to opt in to the suit, an employee would "[j]oin in this lawsuit," "[a]wait the outcome," and "[g]ive up the right to sue separately." The notices further provided that "[o]nce people have had the chance to opt in, the Court will decide whether people who have opted in may participate in this collective action. Only people 'similarly situated' to the plaintiffs may participate in this collective action."

A consent form accompanied the court-approved notices in *Camesi* and *Kuznyetsov*. The consent form indicated, among other things, that "[u]nless I opt to retain separate counsel of my own choice and at my own expense, I hereby . . . authorize the named plaintiffs to make decisions on my behalf concerning the litigation, the method and manner of conducting this litigation, and all other matters pertaining to this lawsuit, including any settlement. . . . ." Using those forms, more than 3,000 individuals consented to opt in to the *Camesi* collective action and more than 800 consented to opt in to the *Kuznyetzov* collective action.[2]

---

[2] Among the many *Kuznyetsov* opt-in plaintiff consent forms are those of individuals who will soon re-appear as participants in the next round of district court litigation, *see infra*, including Steven Halle, Wayne Haber, and KatieJo Bigenho. It appears Senora Tarpley is the sole participant in

5

The parties conducted collective action related discovery for nearly two years, including expert discovery and fact discovery of the named plaintiffs and a sample of the collective action members. The District Judges then entertained cross-motions by the plaintiffs to certify the collective actions and by the defendants to decertify the collective actions.

Both judges decertified the collective actions. In her opinion decertifying *Kuznyetsov*, Judge Ambrose described the basic factual allegations of the claim as follows:

> Defendants require Plaintiffs to take daily, uncompensated meal breaks. To accomplish this, Defendants adopted a computerized timekeeping system, called Kronos, that automatically deducts a thirty minute meal period from nonexempt employees' time records when an employee has worked a shift of more than five or six hours. If an employee is unable to take an uninterrupted thirty minute meal break, the entire thirty minute automatic deduction may be canceled so that the employee is paid for the entire meal break. The manner in which the deduction is cancelled, however, varied by location, department, shift, and supervisor.

the current appeal who did not consent to opt in to *Kuznyetsov*.

6

*Kuznyetsov*, No. 2:10-cv-00948, 2011 WL 6372852, at *1 (W.D. Pa. Dec. 20, 2011). Judge Ambrose then concluded that the plaintiffs' job duties varied significantly from one individual to the next, and that those job duties were "highly relevant in terms of how, why and whether the employees were compensated properly for missed or interrupted meal breaks." *Id.* at *5. In addition, more than 300 different individuals supervised the plaintiffs, the supervisors had individual authority to implement policies as to the meal deduction, and the supervisors' practices varied in this regard. *Id*. Finally, Judge Ambrose agreed with the defendants' argument that they would need to present individualized defenses to establish whether the FLSA was violated as to each plaintiff, which "could not be generalized among the 824 plaintiffs." *Id.* at *6. Judge Bissoon reached similar conclusions in *Camesi*. *See Camesi v. Univ. of Pittsburgh Med. Ctr.*, No. 09-85J, 2011 WL 6372873 (W.D. Pa. Dec. 20, 2011).

Thus, both judges concluded that the opt-in plaintiffs were not "similarly situated" to the named plaintiffs. When they decertified the two collective actions, the judges also dismissed the claims of all opt-in plaintiffs without prejudice to re-filing individual actions.

B.

In an express effort to seek immediate appellate review of the decertification orders, the named plaintiffs in both *Camesi* and *Kuznyetsov* moved to voluntarily dismiss their claims with prejudice pursuant to Rule 41(a) of the Federal Rules of Civil Procedure. The two district judges granted the

7

motions and the named plaintiffs promptly filed notices of appeal. This court consolidated the two appeals. In *Camesi v. Univ. of Pittsburgh Med. Ctr.*, 729 F.3d 239 (3d Cir. 2013), we dismissed the appeals for lack of jurisdiction.

First, we determined that a decertification order, like a class certification order in the Rule 23 context, is an interlocutory order that is not appealable under 28 U.S.C. § 1291. *Id.* at 245. Then, relying on our class action decision in *Sullivan v. Pac. Indem. Co.*, 566 F.2d 444 (3d Cir. 1977), which we found to be controlling, we determined that the named plaintiffs in *Camesi* and *Kuznyetsov* improperly had attempted to short-circuit the procedure for appealing an interlocutory order that is separate from, and unrelated to, the merits of their case. *Camesi*, 729 F.3d at 245. We explained that the named plaintiffs could have obtained appellate review of the decertification decision by proceeding to a final judgment on the merits of their individual claims or, in the alternative, by seeking permission to certify an interlocutory appeal under 28 U.S.C. § 1292(b). Instead, plaintiffs attempted to manufacture finality through a voluntary dismissal of their cases. We rejected this "procedural sleight-of-hand." *Id.*

We further determined that, by voluntarily dismissing their claims with prejudice, the named plaintiffs mooted their claims in *Camesi* and *Kuznyetsov*. *Id.* at 247. In doing so, the named plaintiffs extinguished any residual representational interest they may once have had in bringing claims on behalf of individuals who had filed consents to opt in to the collective action. *Id.* We did not then address the more difficult question of whether, when individuals have opted in

8

to a collective action following conditional certification, a plaintiff who has filed the collective action may retain a justiciable interest in the litigation based *only* upon his or her representative capacity.  Instead, we concluded that, in the specific circumstance of a voluntary dismissal, "it would be anomalous to conclude that [the *Camesi*/*Kuznyetsov*] Appellants are 'similarly situated' to opt-in plaintiffs who, unlike Appellants, have actually retained their individual claims.  Without any personal stake in the matter, [the *Camesi*/*Kuznyetsov*] Appellants should not be permitted to represent opt-in plaintiffs." *Id.*

We therefore dismissed *Camesi* for lack of appellate jurisdiction.

C.

Soon after we issued our *Camesi* opinion, the next round of district court litigation began. The same law firm that represented the *Camesi/Kuznyetsov* plaintiffs filed two new FLSA collective action complaints on behalf of two new sets of named plaintiffs against the same hospital defendants, raising substantially the same FLSA claims concerning work during unpaid meal breaks. The new complaints proposed slightly different definitions of the collective actions than had been proposed in *Camesi* and *Kuznyetsov*. The follow-up to *Camesi* was *Belle v. Univ. of Pittsburgh Med. Ctr.*, No. 2:13-cv-01448 (W.D. Pa.), while the follow-up to *Kuznyetsov* was *Halle v. West Penn Allegheny Health Sys.*, No. 2:13-cv-01449 (W.D. Pa.). Both cases were assigned to Judge Bissoon, who had presided over *Camesi*.

In *Belle*, before the named plaintiffs filed a motion to conditionally certify a collective action, more than 900 individuals filed consents to opt in. The defendants moved to dismiss the collective action allegations on grounds of issue preclusion, arguing that the issue of certification of the collective action had been fully litigated in *Camesi* and should not be relitigated in *Belle*.

Judge Bissoon agreed. By order dated September 29, 2014, she concluded that, despite minor "tweak[s]," *Belle* was a "redux" of *Camesi* in which the "theories of liability remain[ed] materially unchanged." *Belle,* No. 2:13-cv-01448, 2014 WL 4828899 at *1 (W.D. Pa. Sept. 29, 2014). She therefore queried whether it would be proper to allow the *Camesi* opt-ins to re-litigate the unfavorable decertification

10

ruling in *Camesi* through a new lawsuit. She concluded, invoking the doctrine of issue preclusion, that "[t]he answer to this question is, resoundingly, 'no.'" *Id.*

Specifically, Judge Bissoon determined that issue preclusion applied because decertification already had been litigated in *Camesi*, the decision in *Camesi* was sufficiently final for purposes of issue preclusion, and all the named plaintiffs in *Belle* had opted in to *Camesi* and thus had a full and fair opportunity to litigate the issue.[3] Accordingly, she granted the defendants' motion to dismiss, struck the collective action allegations from the complaint, and dismissed the claims of the opt-in plaintiffs without prejudice to re-filing individual complaints. The named *Belle* plaintiffs subsequently accepted offers of judgment under Rule 68 of the Federal Rules of Civil Procedure. No appeal followed.

As in *Belle*, numerous individuals (more than 250) filed consents to opt in to *Halle* before Judge Bissoon had an opportunity to address whether a collective action should be conditionally certified. Also as in *Belle*, the defendants filed a motion to dismiss the collective action allegations on the ground of issue preclusion. On November 6, 2014, Judge Bissoon granted the motion, incorporating by reference her opinion on issue preclusion in *Belle*. *See Halle v. W. Penn*

---

[3] Judge Bissoon also observed that, although a "scant number" of *Belle* opt-ins had not participated in *Camesi* (less than 5% of them), principles of privity would extend the issue preclusion bar to those in *Belle* who had not opted in to *Camesi*.

11

*Allegheny Health Sys. Inc*., No. 2:13-cv-1449-CB (W.D. Pa. filed Nov. 6, 2014).[4]

On July 27, 2015, the sole named plaintiff in *Halle*, Steven Halle, accepted an offer of judgment from West Penn under Rule 68 of the Federal Rules of Civil Procedure in the amount of $2,392.00 for back pay and liquidated damages. Consistent with the terms of Halle's acceptance, Judge Bissoon entered judgment against West Penn, dismissed Halle's claims against the remaining defendants with prejudice, and administratively closed the case.

Then, three of the *Halle* opt-in plaintiffs – Senora Tarpley, KatieJo Bigenho, and Wayne Haber – filed this appeal. Steven Halle did not appeal and is not participating in this appeal.

II.

Before turning to the matter before us, we consider a fundamental question arising from the procedural history of this case: just what is a "collective action"[5] under the FLSA?

---

[4] Judge Bissoon observed that the "overlap" between *Kuznyetsov* and *Halle* was less than in *Camesi*/*Belle* (just less than 81%, as opposed to slightly more than 95%), but concluded "this distinction does not modify the Court's analyses and conclusions." *Halle v. W. Penn Allegheny Health Sys. Inc*., No. 2:13-cv-1449-CB, slip op. at 1 n.1 (W.D. Pa. filed Nov. 6, 2014).

To answer this question, we first look to the relevant portion of the FLSA, which provides that an action may be brought "by any one or more employees for and in behalf of himself or themselves and other employees similarly situated" and that "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." 29 U.S.C. § 216(b). This language raises more questions than it provides answers. While the first sentence sounds in representational terms (to proceed "in behalf of" others "similarly situated"), the second sentence refers to those who file consents as "party plaintiffs," seeming to imply that all who affirmatively choose to become participants have an equal, individual stake in the proceeding.

Congress has not acted to shed light on any of these provisions. Since the statute was enacted in its current form in 1947,[6] Congress has provided no framework setting forth how and when it is to be determined whether employees are "similarly situated," the significance of "party plaintiff" status, or – most relevant to the parties here –who may appeal

[5] Although the statute does not employ the phrase "collective action," the term appears in the FLSA's legislative history, *see* H.R. Rep. No. 80-326, at 13 (1947) (Conf. Rep.), and is accepted as the appropriate designation for the type of representative action described in FLSA § 216(b).

[6] Further, Congress added the "opt-in" provision, setting forth that "no employee shall be a party plaintiff to any such action unless he gives his consent in writing. . . ." *See* H.R. Rep. No. 80-326, at 13 (1947) (Conf. Rep.).

13

a collective action determination and when that appeal may be taken. Nor have procedural rules been promulgated to guide courts and parties in processing collective actions. As a result, courts have been left to consider these matters when they arise, frequently borrowing or adapting procedures, concepts, and nomenclature from the Rule 23 class action context, while recognizing that there remain important differences between a Rule 23 class action and a collective action. *Compare* 7B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1807 (3d ed. 2016) ("[C]ollective actions behave in many ways like Rule 23 class actions . . . .") *with Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1529 (2013) (distinguishing class action cases because "Rule 23 class actions are fundamentally different from collective actions under the FLSA . . ." (citation omitted)); *see also, e.g., Cameron-Grant v. Maxim Healthcare Svcs., Inc.,* 347 F.3d 1240, 1249 (11th Cir. 2003) ("[Section] 216(b) is a fundamentally different creature than the Rule 23 class action."). Indeed, we have recognized an unfortunate side effect of the often blurred lines between the two types of proceedings: "expedient adoption of Rule 23 terminology with no mooring in the statutory text of § 216(b) may have injected a measure of confusion into the wider body of FLSA jurisprudence." *Symczyk v. Genesis Healthcare Corp.*, 656 F.3d 189, 194 (3d Cir. 2011), *rev'd on other grounds by* 133 S. Ct. 1523.

To focus, then, on what a collective action is and is not, we first observe the unremarkable fact that an FLSA collective action is a form of group litigation in which a named employee plaintiff or plaintiffs file a complaint "in

14

behalf of" a group of other, initially unnamed employees who purport to be "similarly situated" to the named plaintiff. Thus, via § 216(b), the FLSA provides a vehicle for managing claims of multiple employees against a single employer. By permitting employees to proceed collectively, the FLSA provides employees the advantages of pooling resources and lowering individual costs so that those with relatively small claims may pursue relief where individual litigation might otherwise be cost-prohibitive. It also yields efficiencies for the judicial system through resolution in one proceeding of common issues arising from the same allegedly wrongful activity affecting numerous individuals. *See Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989); *see also* 1 Joseph M. McLaughlin, *McLaughlin on Class Actions* § 2:16 (12th ed. 2015) ("The purpose of a collective action under the FLSA is to allow plaintiffs to minimize individual expense in pursuing wage rights through pooled resources and to benefit the judicial system through unitary resolution of common legal and factual issues arising from the same conduct.").

When a named plaintiff files a complaint containing FLSA collective action allegations, the mere presence of the allegations does not automatically give rise to the kind of aggregate litigation provided for in Rule 23. Rather, the existence of a collective action depends upon the affirmative participation of opt-in plaintiffs. *See Smith v. T-Mobile USA, Inc.*, 570 F.3d 1119, 1121 (9th Cir. 2009); *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1259 (11th Cir. 2008). Courts are then called upon to decide whether those who purport to join the collective action are "similarly situated" as

15

intended by the statute. Because there are no formal procedural rules that mandate how to accomplish this task, courts have developed a practical approach to managing FLSA collective actions. This approach, which has been recognized by the Supreme Court and is widely accepted in most jurisdictions, is a two-step certification process.[7] *See Genesis Healthcare,* 133 S. Ct. at 1530; *Zavala v. Wal Mart Stores Inc.*, 691 F.3d 527, 536 (3d Cir. 2012).

The first step, so-called conditional certification, requires a named plaintiff to make a "modest factual showing" – something beyond mere speculation – to demonstrate a factual nexus between the manner in which the employer's alleged policy affected him or her and the manner in which it affected the proposed collective action members. *Zavala*, 691 F.3d at 536 n. 4. The "sole consequence" of conditional certification is the dissemination of court-approved notice to potential collective action members. *Genesis Healthcare*, 133 S. Ct. at 1530. Conditional certification, therefore, is not a true certification, but rather an exercise of a district court's discretionary authority to oversee

---

[7] A minority of courts has rejected the two-step certification approach in favor of a more traditional Rule 23-style analysis, considering numerosity, commonality, typicality, and adequacy of representation. *See* 1 Joseph M. McLaughlin, McLaughlin on Class Actions § 2:16 & n.74 (13th ed. 2013). We rejected that approach in *Zavala v. Wal Mart Stores Inc.*, 691 F.3d 527, 536 (3d Cir. 2012).

and facilitate the notice process. *Zavala*, 691 F.3d at 536 (citing *Hoffman-La Roche v. Sperling*, 493 U.S. 165 (1989)[8]).

While conditional certification is discretionary, the Supreme Court has recognized its importance. A district court's early intervention in the preparation and distribution of notice to potential participants serves legitimate purposes, including avoidance of a multiplicity of duplicative suits and establishing cut-off dates to expedite disposition of the action. *Hoffman-La Roche*, 493 U.S. at 171-72. Nevertheless, "[w]hatever significance 'conditional certification' may have in § 216(b) proceedings, it is not tantamount to class certification under Rule 23." *Genesis Healthcare*, 133 S. Ct. at 1532.

A denial at the conditional certification stage is not necessarily a final determination of whether the matter may proceed as a collective action. Some courts permit the issue to be revisited after discovery or efforts by the named plaintiff to re-define the contours of the proposed collective action. *See, e.g.*, *Bamgbose v. Delta-T Group, Inc.*, 724 F. Supp. 2d 510, 514 (E.D. Pa. 2010) (motion for conditional certification denied without prejudice, to be revisited after discovery for possibility of developing "subclasses'); *see also* Wright & Miller, *supra*, § 1807 ("If conditional certification is denied, the court may allow discovery to provide plaintiffs

---

[8] Although *Hoffman-La Roche* arose in the context of a proceeding under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, the ADEA incorporates enforcement provisions of the FLSA, including the collective action provisions of 29 U.S.C. § 216(b).

a second opportunity to obtain sufficient evidence of a collective to warrant conditional certification and the notice to opt in.").

Generally, after conditional certification has been granted (although not always, given the discretionary nature of the first stage), individuals file notices providing their written consent to participate in the collective action pursuant to § 216(b).[9]  As in *Kuznyetsov* and *Halle*, the notices may indicate that the opt-in plaintiffs consent to having the named plaintiffs litigate, on their behalf, the FLSA claims.  *See, e.g.*, *Prickett v. DeKalb County*, 349 F.3d 1294, 1297 (11th Cir.

---

[9] Some courts refer to the process of opting in to a collective action as "joinder."  *See Grayson v. K Mart Corp.*, 79 F.3d 1086, 1096 (11th Cir. 1996) (Garth, J.) (referring to a certification of an ADEA collective action as "permitting opt-in joinder of 'similarly situated' plaintiffs").  But opt-in plaintiffs are held to a lesser standard than FLSA named plaintiffs or other plaintiffs who join in civil actions.  For instance, ADEA opt-in plaintiffs do not need to exhaust administrative remedies, while ADEA named plaintiffs do.  *See Lusardi v. Lechner*, 855 F.2d 1062, 1078 (3d Cir. 1988) (recognizing that "in other contexts the opt-in class action has been analogized to permissive joinder and intervention" but concluding that opt-ins in ADEA suit need not satisfy exhaustion requirements where named plaintiffs have done so).  Moreover, opt-in plaintiffs are held to a less stringent standard than under Rule 20 of the Federal Rules of Civil Procedure.  *See Grayson*, 79 F.3d at 1096-97.

18

2003) ("The consent given was for the named plaintiffs to represent the interests of the employee in adjudicating all claims that the employee had under the FLSA.").

This "opt-in" requirement – mandating that each individual must file an affirmative consent to join the collective action – is the most conspicuous difference between the FLSA collective action device and a class action under Rule 23. *See De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301, 306 (3d Cir. 2003). "This difference means that every plaintiff who opts in to a collective action has party status, whereas unnamed class members in Rule 23 class actions do not." Wright & Miller, *supra*, § 1807; *see also Prickett*, 349 F.3d at 1297 ("[B]y referring to them as 'party plaintiff[s],' Congress indicated that opt-in plaintiffs should have the same status in relation to the claims of the lawsuit as the named plaintiffs."). This prompts the as-yet unanswered question of what "party status" means in a collective action, particularly before a district court has considered whether those who have filed consent forms are in fact "similarly situated" to the named plaintiff for purposes of § 216(b).[10]

---

[10] Notably, § 216(b) is written in the negative, providing that "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." Thus, the statute establishes that it is, at a minimum, necessary to file a written consent in order to become a party-plaintiff, but it is silent as to whether filing such a consent, without more, is sufficient to confer that status.

Also after a grant of conditional certification, the parties conduct certification-related discovery, as they did in *Camesi* and *Kuznyetsov*. Initial discovery may include efforts by the named plaintiffs to obtain employee contact information for purposes of notifying potential collective action members of the pending matter. Once opt-in consents have been filed, discovery typically moves forward to assess whether the opt-ins are "similarly situated" to the named plaintiffs. Frequently, this discovery focuses on the named plaintiffs and a subset of the collective group. In *Camesi*, for instance, the parties agreed to conduct discovery regarding 75 current and former employees to be chosen by the defendants, including 10 depositions and the completion of written questionnaires. *Camesi*, No. 3:09-cv-00085, 2011 WL 6372873 at *2 (W.D. Pa. Dec. 20, 2011). Similarly, in *Kuznyetsov* the parties conducted discovery as to "18 sample Plaintiffs." *Kuznyetsov*, 2011 WL 6372852 at * 4. *See also, e.g.*, *Lusardi v. Xerox Corp.*, 975 F.2d 964, 967 (3d Cir. 1992) (in ADEA collective action, parties randomly selected 51 out of the 1,312 conditional collective action members for discovery to determine whether all opt-ins were similarly situated to the named plaintiffs). Upon conclusion of discovery, the parties will file motions seeking final certification or decertification of the collective action.

At this stage, known as final certification, the named plaintiffs bear the burden of showing that the opt-in plaintiffs are "similarly situated" to them for FLSA purposes. *Zavala*, 691 F.3d at 537; *see also Bouaphakeo v. Tyson Foods, Inc.*, 765 F.3d 791, 801 (8th Cir. 2014) *aff'd*, 136 S. Ct. 1036 (2016); *O'Brien v. Ed Donnelly Enter., Inc.*, 575 F.3d 567,

584 (6th Cir. 2009), *abrogated on other grounds by Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 669 (2016). "Being 'similarly situated' . . . means that one is subjected to some common employer practice that, if proved, would help demonstrate a violation of the FLSA." *Zavala,* 691 F.3d at 538.

Courts will consider a variety of factors in reaching this determination. "These include the factual and employment settings of the individual plaintiffs, the different defenses to which the plaintiffs may be subject on an individual basis, the degree of fairness and procedural impact of certifying the action as a collective action, and whether plaintiffs have made the appropriate filings with the EEOC." Wright & Miller, *supra*, § 1807. Our Court endorses an ad hoc approach to this analysis, considering all relevant factors and making a determination on a case-by-case basis as to whether the named plaintiffs have satisfied this burden by a preponderance of the evidence. *Zavala*, 691 F.3d at 536-37.

If a collective action is decertified at the final stage, the matter will proceed as in *Camesi* and *Kuznyetzov*: the court will decertify the class, dismiss the opt-in plaintiffs without prejudice, and permit the named plaintiffs to proceed to trial.[11] *See Lusardi v. Lechner*, 855 F.2d 1062, 1079 (3d

---

[11] While a dismissed opt-in plaintiff retains the ability to pursue *individual* claims after a district court decertifies a collective action, we have located no authority (nor have the parties cited any) discussing the approach taken by Steven Halle in the underlying case here – namely, his decision, upon dismissal without prejudice from *Kuznyetsov*, to re-file not

21

Cir. 1988) ("A district court has no power or jurisdiction to rule on the merits of the claims of individual [opt-in] members of a putative opt-in class when it denies certification."); *see also* Wright & Miller, *supra*, § 1807. If, however, final certification is granted, "the action proceeds to trial on a representative basis." *Id.* As previously discussed, a decision on certification of a collective action is interlocutory and therefore not immediately appealable pursuant to § 1291. *Camesi*, 729 F.3d at 245.

---

only his individual claims, but also to try to resurrect substantially similar collective action allegations.

III.

With this understanding of the FLSA collective action device, we turn to the appeal before us. The District Court exercised jurisdiction pursuant to 28 U.S.C. § 1331. We have jurisdiction pursuant to 28 U.S.C. § 1291 to review "final decisions" of district courts. *Giles v. Campbell*, 698 F.3d 153, 157 (3d Cir. 2012). A final decision is one that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 712 (1996) (quoting *Catlin v. United States*, 324 U.S. 229, 233 (1945)). Although the parties did not raise the issue, we must satisfy ourselves of our jurisdiction over this appeal.[12] *See Emp'rs Ins. of Wausau v. Crown Cork & Seal Co.,* 905 F.2d 42, 45 (3d Cir. 1990).

In the end, Appellants, three opt-in plaintiffs, were dismissed without prejudice from Halle's case and lost no substantive or procedural rights. Therefore, they have no final order from which to appeal. This conclusion is reinforced both by the language of their opt-in consent forms, which handed over all litigation authority to named plaintiff Steven Halle, and by the opt-in plaintiffs' passive role in the suit. While it may seem unfair to require the opt-in plaintiffs either to litigate a case to conclusion or certify an interlocutory appeal, finality – not unsupported assertions about fairness – defines our court's jurisdiction.

---

[12] Because the parties' briefs give rise to doubts concerning our ability to exercise appellate jurisdiction, we directed the parties to file supplemental briefs on this issue.

23

A.

Appellants seek review of Judge Bissoon's order dated November 6, 2014.  That order had two important effects: it dismissed Steven Halle's collective action allegations with prejudice on the ground of issue preclusion, and it also dismissed[13] the claims of the opt-in plaintiffs without prejudice to re-filing individual actions.  Neither of these aspects of Judge Bissoon's order constitutes a final, appealable decision for purposes of 28 U.S.C. § 1291.

The dismissal of the opt-in plaintiffs' claims without prejudice is not a final decision for purposes of § 1291.  All opt-in plaintiffs may pursue their FLSA claims.  "Typically a dismissal without prejudice is not a final decision because the plaintiff may refile the complaint, thereby creating the risk of 'piecemeal' appellate litigation." *S.B. v. Kindercare Learning Ctrs., LLC*, 815 F.3d 150, 152 (3d Cir. 2016); *see also Borelli v. City of Reading*, 532 F.2d 950, 951 (3d Cir. 1976) ("Generally, an order which dismisses a complaint without prejudice is neither final nor appealable because the deficiency may be corrected by the plaintiff without affecting the cause of action.").  The November 6, 2014 order does not resolve any of the opt-in plaintiffs' claims on the merits and acknowledges that those individuals remain free to file their own FLSA actions.

---

[13] Although the order states that the opt-in claims were "denied," a denial implies a decision on the merits of the claim.  Because Judge Bissoon did not reach the merits of the opt-in plaintiffs' claims, for clarity we refer to the claims as dismissed.

24

In addition, the dismissal of Halle's collective action allegations is not a final, appealable decision under § 1291. Although that decision arose in the context of a motion to dismiss rather than a motion to decertify, it results in a complaint that no longer alleges a collective action. Our decision in *Camesi* therefore controls: such an order is interlocutory and does not provide a basis for an immediate appeal under § 1291.[14] *Camesi*, 729 F.3d at 245; *see also, e.g.*, *In re: Complaint of Ingram Barge Co.*, 517 F.3d 246, 247 (5th Cir. 2008) (per curiam) (holding that the court did not have appellate jurisdiction under § 1291 or § 1292(a)(3) because the district court's order striking class action allegations did not settle parties' rights). Because the decertification is separate from, and unrelated to, the merits of Halle's individual case, in the absence of a district court order under 28 U.S.C. § 1292(b) permitting an immediate appeal (which Halle did not request and which Judge Bissoon therefore did not grant), appellate review of this interlocutory decertification decision is available by proceeding to a final judgment on the merits of Halle's individual claims. *See Camesi*, 729 F.3d at 245.

---

[14] Similarly, in the context of class actions, prior to the 1998 amendments to Rule 23(f) that today permit parties to pursue immediate review of certification decisions, decisions decertifying a class had to await review until the plaintiff obtained a final judgment in the case – even if proceeding as an individual rather than as part of a larger group might mean the "death knell" for the action. *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 471 (1978).

Appellants concede that the November 6 order was not appealable when Judge Bissoon entered it, and they did not appeal at that time. Instead, they waited to appeal until after Steven Halle accepted West Penn's offer of judgment in full satisfaction of his individual claims.

B.

On July 27, 2015, Judge Bissoon entered judgment consistent with Halle's acceptance of West Penn's offer of judgment, dismissed Halle's remaining claims against the other defendants with prejudice, and administratively closed the case. This, Appellants argue, constitutes a final decision for purposes of § 1291, and, for appeal purposes, merges with all prior decisions in the case, including the November 6, 2014, decertification decision. *See In re: Westinghouse Sec. Litig.*, 90 F.3d 696, 706 (3d Cir. 1996) ("Under the 'merger rule,' prior interlocutory orders merge with the final judgment in a case, and the interlocutory orders (to the extent that they affect the final judgment) may be reviewed on appeal from the final order." (citations omitted)).

West Penn argues that Halle's acceptance of an offer of judgment operates like the voluntary dismissal in *Camesi*: it moots Halle's personal claims and extinguishes his representational interest in proceeding on behalf of the opt-in plaintiffs. While this area of the law is "in a state of flux," *Camesi*, 729 F.3d at 247,[15] we need not reach that issue

---

[15] *Compare U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 400 (1980) (holding that, in the Rule 23 class action context, named plaintiff may appeal a denial of class certification even

26

because Halle did not file this appeal. Instead, in some procedural gymnastics apparently aimed at avoiding the mootness issue, three opt-in plaintiffs – Senora Tarpley, KatieJo Bigenho, and Wayne Haber – filed this appeal on behalf of themselves and "all other opt-in plaintiffs whose claims were dismissed."

## C.

We must, therefore, consider whether Appellants retained a stake in Steven Halle's ongoing individual case such that they are entitled to pursue an appeal as of right at its conclusion, after Halle's individual claims have become

---

if his or her individual claims had been satisfied through the entry of judgment)*, with Genesis Healthcare*, 133 S. Ct. at 1529 (distinguishing *Geraghty* to hold that, prior to any individuals opting in, mooting the named plaintiff's claims moots the entire suit); *Cameron-Grant*, 347 F.3d at 1249 ("[A] § 216(b) plaintiff . . . presents only a claim on the merits . . . [and] has no claim that he is entitled to represent other plaintiffs."); *Lusardi v. Xerox Corp.*, 975 F.2d at 974 (comparing collective actions to class actions and observing that "[n]ormally, when claims of the named plaintiffs become moot before class certification, dismissal of the action is required"); *Smith v. T-Mobile USA Inc.*, 570 F.3d 1119, 1123 (9th Cir. 2009) ("Because the plaintiffs voluntarily settled all of their claims after the district court's denial of certification, they have failed to retain a personal stake in the litigation and their case is moot.").

moot.[16]  We conclude that, for purposes of appeal, Appellants were no longer "parties" to the case after they were dismissed without prejudice from Halle's proceeding.  *See Devlin v. Scardelletti*, 536 U.S. 1, 7-8 (2002) (an appeal of a class action settlement by an unnamed class member does not raise concerns of standing, but rather "[w]hat is at issue, instead, is whether petitioner should be considered a 'party' for the purposes of appealing.").  Appellants therefore cannot pursue an appeal from Steven Halle's individual judgment.

In *Devlin*, the Supreme Court concluded that an unnamed member of a Rule 23 class action who was affected by, and had objected to, the settlement of a class action during a hearing pursuant to Rule 23(e) of the Federal Rules of Civil Procedure had the right, as a party to the action, to appeal the settlement without first filing a motion for leave to intervene. The Supreme Court held that "[w]hat is most important to this case is that nonnamed class members are parties to the

---

[16] Appellants did not actively participate in the proceeding at any time prior to their notice of appeal.  For example, when Steven Halle accepted judgment, Appellants did not move to intervene and substitute themselves as named plaintiffs in Steven Halle's stead.  Thus, we need not consider whether such efforts might have been sufficient to keep the case "alive" for purposes of appealing the dismissal of the collective action allegations.  *See, e.g.*, *Lusardi*, 975 F.2d at 984-85 (discussing unsuccessful efforts of opt-in plaintiffs to intervene in decertified collective action *after* named plaintiffs' claims were extinguished).

proceedings in the sense of being bound by the settlement." *Devlin*, 536 U.S. at 10.

The opt-in plaintiffs here stand in contrast to the unnamed Rule 23 class member bound by a class action settlement as described in *Devlin*. The opt-in plaintiffs were dismissed without prejudice when the collective action allegations were struck from the complaint and are not bound by any aspect of the judgment that was ultimately entered in Steven Halle's case. Consequently, they are not subject to a final decision disposing of their rights from which they may file an appeal under § 1291. *See id.* at 14 ("[N]o federal statute or procedural rule directly addresses the question of who may appeal from approval of class action settlements, while the right to appeal from an action that finally disposes of one's rights has a statutory basis." (citing 28 U.S.C. § 1291)).

Even if, after Judge Bissoon dismissed the collective action allegations, Steven Halle retained some residual right to represent "similarly situated" employees, any such residual right does not extend to the opt-in plaintiffs. The opt-in plaintiffs retained their own substantive FLSA claims and remain free to file such claims and pursue final judgments on the merits. "While [a named plaintiff's] settlement may have the collateral effect of foreclosing unjoined claimants from having their rights vindicated in *respondent's* suit, such putative plaintiffs remain free to vindicate their rights in their own suits. They are no less able to have their claims settled or adjudicated following respondent's suit than if her suit has never been filed at all." *Genesis Healthcare*, 133 S. Ct. at 1531.

29

When the opt-in plaintiffs were dismissed without prejudice, they did not suffer an adverse judgment on the merits of any claim. They lost nothing but the ability to proceed in Halle's case. This does not give rise to a right to pursue an appeal from Halle's individual final judgment. *See McLaughlin v. Pernsley*, 876 F2d 308, 313 (3d Cir. 1989) (where district court's order does not affect a legally cognizable interest of appellant, appeal will be dismissed for lack of standing); *In re: Glenn W. Turner Enter. Litig.*, 521 F.2d 775, 781 (3d Cir. 1975) ("A party may appeal only if he is aggrieved by the judgment or the order of the district court.").

Our understanding of the representative nature of FLSA collective actions is consistent with our conclusion that the opt-in plaintiffs cannot pursue this appeal. Steven Halle filed this proceeding, representing both himself and others "similarly situated." Halle alone litigated in that representational role: after filing the complaint, he raised and responded to motions, participated in alternative dispute resolution, and actively engaged in the litigation process. The opt-in plaintiffs were mere passive observers until they were struck from the proceeding entirely.

When they opted to benefit from the efficiencies of participating in a collective action, these individuals agreed to set aside the individual authority to litigate, including the ability to appeal. Each of the opt-in plaintiffs' consent forms stated, "I hereby . . . authorize and designate the named plaintiffs to act on my behalf concerning the litigation, this investigation, consideration of settlement and attorneys' fees and costs, and all other matters pertaining to this lawsuit." To

30

the extent that the Appellants could have appealed – and we hold above that they could not – this language waived their right to do so. *Cf. Prickett*, 349 F.3d at 1297 (relying on "the language of the consent forms that the opt-in plaintiffs signed in this case" to determine which rights opt-in plaintiffs delegated to the named plaintiffs). By consenting to join Halle's collective action, these opt-in plaintiffs ceded to Halle the ability to act on their behalf in all matters, including the ability to pursue this appeal.

D.

Appellants do not identify a single case in which a Court of Appeals has exercised jurisdiction over an appeal remotely similar to this one – in which a collective action opt-in plaintiff seeks appellate review of a decision striking collective action allegations from a complaint and where the named plaintiff's claims are moot. Appellants are subject to a non-final order dismissing their claims without prejudice, and they offer no clear basis for the exercise of appellate jurisdiction. Rather, they advocate that, as a matter of fairness, this Court *should* exercise jurisdiction over this appeal.

Appellants contend it would be unfair to dismiss this appeal because it leaves the opt-in plaintiffs without an opportunity to obtain appellate review of Judge Bissoon's decision to dismiss the collective allegations from Halle's complaint now that West Penn has "picked off" Halle by

31

offering him a Rule 68 judgment which mooted his claims.[17] It is true that we have observed the practical concern that the opt-in plaintiffs raise – namely, that offers of judgment, like the offer Halle accepted, are used by defendants to strategically "pick off" named plaintiffs prior to certification (or, here, appellate review of certification-related decisions), and may thereby result in the frustration of the collective action vehicle. *See Symczyk*, 656 F.3d at 197-98.

When the Supreme Court considered this argument, the potential for unfairness did not affect its determination that, where the named plaintiff's Rule 68 judgment mooted her claims, the Court was deprived of jurisdiction. *Genesis Healthcare*, 133 S. Ct. at 1531. Similarly here, fairness considerations do not undermine our fundamental conclusion that the opt-in plaintiffs lack a final decision that we may review under § 1291.

And any perceived unfairness is tempered by the fact that, in *Camesi*, the panel set forth a path for pursuing review of FLSA collective action certification decisions. We here echo that point: to obtain appellate review of an order

---

[17] During oral argument, Appellants attempted to argue for the first time that an inability to obtain merits review in this appeal would amount to a deprivation of their constitutional right to due process. "An appellant waives an argument in support of reversal if he does not raise that argument in his opening brief." *AT & T Inc. v. FCC*, 582 F.3d 490, 495 (3d Cir. 2009) (citation omitted), *rev'd on other grounds*, 562 U.S. 397 (2011). Because the constitutional claim was not presented in Appellants' opening brief, it is waived.

decertifying a collective action, the plaintiff must either proceed to a final judgment on the merits of his or her individual claims or seek the District Court's permission to pursue an immediate appeal. *Camesi*, 729 F.3d at 245. Appellants have pursued neither course. It should, therefore, be unsurprising that they face dismissal for lack of appellate jurisdiction.

## IV.

For the foregoing reasons, we lack jurisdiction over this appeal. Accordingly, it will be dismissed.