**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 24-1830

_____

JOSEPH ROBERTS; KIM ZAPATA, doing business as KIM'S CARS;
KIM ZAPATA,
Appellants

v.

THE BOROUGH OF MANHEIM; DONNA CZEINER, individually and in her official
capacity as Zoning and Codes Officer; ADRIN VARGAS, individually and in his official
capacity as Assistant Zoning and Codes Officer; JAMES R. FISHER, individually and in
his official capacity as Borough Manager

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 5:23-cv-00832)
District Judge: Honorable Gerald A. McHugh

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
on March 4, 2025

Before: MATEY, FREEMAN, and ROTH, *Circuit Judges*

(Opinion filed: October 17, 2025)

_____

OPINION[*]

_____

FREEMAN, *Circuit Judge*.

Joseph Roberts and Kim Zapata sued a municipality and one of its zoning officers, asserting equal protection and *Monell* claims for selective enforcement of local ordinances. The District Court granted summary judgment for the defendants. For the reasons that follow, we will affirm that order.

I

In 2017, Roberts, who is Caucasian, purchased a multi-lot industrial property in the Borough of Manheim, Pennsylvania. He ran a battery business on one of the lots and, as relevant here, leased two other lots to Hispanic tenants who ran car-related businesses. One of those tenants was Zapata, who had begun operating an auto-repair business on the property several years before Roberts bought the property. The other Hispanic tenant ran an online auto-parts shop.

In January 2021, noise complaints from neighbors caused a Borough zoning officer, Donna Czeiner, to inspect the property. Czeiner found that Roberts's battery business and Zapata's auto-repair business were violating several local ordinances as well as a 1998 decision of Manheim's Zoning Hearing Board ("the 1998 Decision"). The

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

violations from Roberts's business involved work on weekends, the number and timing of truck deliveries, work conducted outside of buildings, and use of portable toilets instead of bathrooms with running water. The violations from Zapata's business included vehicles blocking street access, work conducted outside of buildings, storage of equipment and junk vehicles outside of buildings, and failure to fence off vehicle-storage areas from adjoining residential properties. Several of these conditions violated an ordinance that specifically governed vehicle-repair garages.

Following her January 2021 inspection, Czeiner issued a written warning to Roberts. In the warning, Czeiner noted that the 1998 Decision had been misfiled in the Borough's records but applied to the lots occupied by Roberts's and Zapata's businesses. She also detailed the violations. (Roberts later claimed to have functioning bathroom facilities, but he did not otherwise dispute the accuracy of the violations.)

In February 2021, a new complaint about an idling truck at 4:00 a.m. on a Sunday caused Czeiner to issue a violation notice. In June 2021, Czeiner issued a second violation notice based on the ongoing violations listed in the January 2021 written warning.

Roberts and Borough officials then began a series of meetings and inspections to address the violations. During one of the inspections, Roberts overheard Czeiner tell the Borough's attorney, "[W]e need to get these kind of people out of here so more don't

3

move in." App. 509.[1]  Roberts believed Czeiner was referring to Hispanic people, so he falsely told Czeiner that he owned several of the unregistered vehicles on the property.  In truth, those vehicles belonged to one of Roberts's Hispanic tenants.  The Borough cited the unregistered vehicles that it believed belonged to Zapata but did not cite those it believed belonged to Roberts.

Over the next several months, Roberts cured some of the violations, but others remained unresolved.  In September 2021, the Borough sued Roberts in state court, seeking $12,000 in fines for seven ongoing violations.  In October 2022, the parties reached a settlement whereby the Borough would dismiss the lawsuit in exchange for Roberts's remedying some of the violations.

A few months after settling the Borough's suit, Roberts and Zapata filed this suit against the Borough and Czeiner.[2]  They brought two claims under 42 U.S.C. § 1983: an equal protection claim and a *Monell* claim of municipal liability.  Following discovery, the District Court granted summary judgment for the defendants on both claims.  This timely appeal followed.

---

[1] Czeiner denies making this comment or even knowing Zapata's ethnicity, but we recite the facts in the light most favorable to the parties opposing summary judgment. *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 265 (3d Cir. 2014).

[2] Roberts and Zapata initially filed suit in state court, but the case was removed to federal court.  They also sued two additional defendants who have since been dismissed.  Roberts and Zapata do not appeal the dismissal of those defendants.

II[3]

We exercise plenary review of an order granting summary judgment. *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 265 (3d Cir. 2014). Summary judgment is appropriate only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute about material facts is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[W]e view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Blunt*, 767 F.3d at 265 (citation omitted).

A

To prove an equal-protection violation, plaintiffs must show "that they received different treatment from that received by other individuals similarly situated." *Id.* at 273 (cleaned up). To be similarly situated, persons must be "alike 'in all relevant aspects.'" *Id.* (quoting *Startzell v. City of Phila.*, 533 F.3d 183, 203 (3d Cir. 2008)). "Other factors explaining disparate treatment will usually preclude persons from being similarly situated." *Stradford v. Sec'y Pa. Dep't of Corr.*, 53 F.4th 67, 74 (3d Cir. 2022).

Roberts and Zapata claim that the Borough enforced code violations against Hispanic-owned car-related businesses but did not do the same for Caucasian-owned car-

---

[3] The District Court exercised subject-matter jurisdiction under 28 U.S.C. § 1331. We have jurisdiction under 28 U.S.C. § 1291.

5

related businesses. At the outset, we note that many of the violations arose from Roberts's battery business, and others arose from general conditions on the multi-lot property. But even setting aside those points, the equal protection claim fails because the purported comparators Roberts and Zapata point to either (1) are not similarly situated, or (2) were not treated differently.

One purported comparator is Philip Fiore, the Caucasian operator of an auto sales business in the Borough. Fiore kept his inventory of unregistered vehicles on his auto lot until they sold, sometimes leaving them there for months, and he received no violations. But Fiore is not a valid comparator for several reasons. To name a few: Fiore did not run an auto-repair garage, so he was not subject to the auto-repair-garage ordinance that Zapata's business violated; Fiore was not subject to the 1998 Decision that Roberts's and Zapata's businesses violated; and there is no record of complaints about Fiore's business, whereas the violations on Roberts's property were triggered by complaints from neighbors.

The next purported comparator is Adam Jannone, III, the Caucasian owner of an auto sales and repair business in the Borough. Jannone sometimes kept unregistered vehicles on his lot, and he received no violations. But, unlike Roberts and Zapata, Jannone had an auto dealer's license. That license authorized Jannone to store registered and unregistered vehicles on his business's property. That alone explains why he was not fined for storing unregistered vehicles.

Lastly, Roberts and Zapata point to Jay Shelley and Daniel Ortiz as comparators. Shelley is the Caucasian owner of a property that he leased to tenants with car-related

6

businesses. One of his tenants is Ortiz, who is Hispanic and who ran an auto-repair business. Ortiz stored unregistered vehicles on the property, and the Borough fined Shelley for those vehicles. But this is an example of consistent treatment by the Borough, not the disparate treatment needed to make out an equal protection violation. *See Dique v. N.J. State Police*, 603 F.3d 181, 184 n.5 (3d Cir. 2010).

Absent any record of a similarly situated person who was treated differently, the equal protection claim fails.

## B

The District Court also denied the municipal-liability claim. *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658 (1978). Roberts and Zapata made no argument about this claim in their appellate brief, so this issue is waived. *Halle v. W. Penn Allegheny Health Sys. Inc.*, 842 F.3d 215, 230 n.17 (3d Cir. 2016).

\* \* \*

For the foregoing reasons, we will affirm the District Court's summary judgment order.